### J. E. MORGAN v. THE STATE.

#### No. 2221.   Decided January 16, 1901.

**1. Gaming House—Charge.**

On a trial for playing cards at a gaming house, a charge of court which instructed the jury that "a gaming house is defined as a house where gaming is practiced; a gambling house; a house or room whose use is intended to facilitate gaming purposes, and where sporting characters are invited to congregate for illegal amusement and gaming, or to stake money or other thing of value upon trials of chance or skill or endurance," is sufficiently full and explicit as to what is a gaming house.

**2. Same—Private House.**

A private residence can be made a gaming house where it is shown that it is resorted to indiscriminately by persons who desire to go there and engage in playing cards for money, and especially where one particular room is used for such purpose.

**3. Same—Evidence Sufficient.**

See opinion of facts stated which are held amply sufficient to support a conviction for gaming at a gaming hou~

APPEAL from the County Court of Shackelford. Tried below before Hon. J. M. CHISM, County Judge.

Appeal from a conviction of playing cards in a gaming house; penalty, a fine of $10.

The opinion states the case.

*Warren & Webb,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted for playing cards in a gaming house, and his punishment assessed at a fine of $10. The facts

are substantially as follows: Jim Baskett testified that during the months of August and September, 1898, he played cards for money at appellant's house two or three times a week—just as often as he had the money to play with; that he saw other games played at appellant's house, and at each game money was bet; that on two or three occasions when witness was at appellant's house he saw strangers there playing cards. It was his understanding that appellant's house was a place where he could go to play a game of cards if he had money to bet. In one game he saw a Mexican play, and appellant played in all the games he saw. Appellant's family were not in the room where the playing was going on. There were no restrictions, so far as he heard, as to who could or could not be admitted to the house when the playing was going on, but all who came would be admitted. They played on a square table in the back room of the house, which room was used as a dining room and kitchen by appellant's family. From the game the strangers played at the house he took them to be gamblers, since they seemed to be experts at the business. Witness Albert Gage testified he played at the house on various occasions, with different persons—the names of six were mentioned—and during 1898 he played two or three times a month in the room indicated. There is testimony of several other witnesses to the same effect, some of whom are negroes, who stated they played at appellant's house. Sometimes they played there on invitation of appellant, and sometimes they procured appellant's permission to play. These facts were controverted by appellant, and he shows he was married; had a wife and three children; that they occupied the house which had three rooms, and that the room in controversy was his dining room and kitchen, and the premises was his private residence; and he also denied that he was running or keeping it for the purpose of gaming.

After copying article 379, Penal Code, the court in its charge instructed the jury: "All houses commonly known as public and all gaming houses are included in the meaning of a public house or place. Now, if you believe from the evidence beyond a reasonable doubt that the defendant, J. E. Morgan, did, in the county of Shackelford and State of Texas, play at a game with cards in a public house, to wit, at a certain gaming house there situate, on or about the time alleged in the indictment, then you will find him guilty, and assess his punishment at a fine of not less than ten nor more than twenty-five dollars. The term 'public house' is generic, and includes all houses made public by the occupation carried on in them. A 'gaming house' is defined as a house where gaming is practiced; a gambling house; a house or room whose use is intended to facilitate gaming purposes, and where sporting characters are invited to congregate for illegal amusement and gaming, or to stake money or other thing of value upon trials of chance or skill or endurance." The court then gives the reasonable doubt in the usual and proper form. Appellant vigorously attacks the charge in many respects. He objects because the court copied all of article 379, Penal Code, because it is not all applicable to the facts of this case.

The definition of "gaming house" given by the court we think is correct. Appellant contends a proper definition is "that a gaming house is a house or a part of a house where gaming is carried on as a business." This would be correct, as we held in Anderson v. State (Texas Criminal Appeals), 12 Southwestern Reporter, 868, cited and relied on, by appellant. But it does not follow that the charge given by the court is incorrect. After a careful scrutiny of the charge, we think it is in substantial compliance with the definition given in the Anderson case, supra. In Miller v. State, 35 Texas Criminal Reports, 650, we said: "What is a 'gaming house?' As defined in the Century Dictionary, it is 'a house where gaming is practiced; a gambling house.' In People v. Weithoff, 51 Michigan, 213, 16 Northwestern Reporter, 447, Judge Cooley says: 'A house or room whose use is intended to facilitate gaming purposes, and where sporting characters are invited to congregate for illegal amusement and gaming, or to bet money or other thing of value upon trials of chance, skill or endurance. The house or room must be specially set apart and devoted to the purposes of gaming.'" The charge of the court is an exact copy of this, except the latter clause, and we do not think that it is a necessary element of the definition. The charge of the court is not subject to any of the criticisms urged by appellant, and, without reviewing them further, we say they are not well taken.

It is true as urged by appellant, the facts show the house was his private residence. Yet a private residence can be made a gaming house. We think the evidence here conclusively shows this was done, since Mexicans, negroes, and strangers were found at the house on various occasions engaged in playing cards for money. The evidence further shows that one particular room, to wit, the kitchen and dining room, was continuously used for this purpose. The parties entered the same through the back door leading out in the street, and all parties who desired to play had access to the house. We think the evidence supports the finding of the jury. Thorp v. State, ante, p. 231. The indictment and charge of the court being correct, the judgment is in all things affirmed.

*Affirmed.*

[NOTE.—Appellant's motion for rehearing was overruled February 13, 1901, without a written opinion.—Reporter.]