UNITED STATES of America, Appellee,

v.

Frank SCAVO, Appellant.

No. 78–1574.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 16, 1978.

Decided March 13, 1979.

Rehearing and Rehearing En Banc
Denied April 6, 1979.

Phillip S. Resnick, Minneapolis, Minn., argued and on brief, for appellant.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn. (argued), Andrew W. Danielson, U. S. Atty., and William M. Orth, Legal Intern, Minneapolis, Minn., on brief, for appellee.

Before STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

Frank Scavo appeals from his conviction of being engaged in the business of betting or wagering and knowingly using wire communication facilities for the transmission in interstate commerce of information assisting in the placing of bets or wagers, in violation of 18 U.S.C. § 1084(a). We affirm.

On December 20, 1976 Chief Judge Devitt of the District of Minnesota signed an order authorizing interception of communications conducted on telephones which were suspected of being used in connection with an illegal gambling business being conducted in violation of 18 U.S.C. § 1955. The investigation centered on one Dwight Mezo, who operated a substantial bookmaking business in the Minneapolis area. As a result of this investigation, appellant, along with nine others, was indicted by a grand jury and charged with conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Eight of appellant's co-defendants, including Mezo, pleaded guilty and charges against a ninth codefendant were dropped.

On March 8, 1978 appellant was charged by information with use of a communications facility to transmit wagering information in violation of 18 U.S.C. § 1084(a). As a result of plea negotiations, appellant con-

sented to having his case transferred to the District of Nevada (where he resided) for plea and sentence pursuant to Rule 20 of the Federal Rules of Criminal Procedure. There, appellant waived indictment and tendered a plea of guilty. For reasons not appearing of record, the Nevada district court rejected the plea of guilty and appellant then entered a plea of nolo contendere, which was accepted by the court. Thereafter, appellant successfully moved to withdraw his plea of nolo contendere and the case was transferred back to the District of Minnesota for trial.

At trial the government's evidence consisted principally of playing recordings of telephone conversations obtained from the court-authorized wiretaps on the telephones of Dwight Mezo. In addition, F.B.I. Special Agent William Holmes was qualified as an expert in gambling and testified about the nature of gambling operations, gambling terminology, and his opinion as to appellant's role in Mezo's bookmaking operation. He testified that appellant, then a resident of Las Vegas, provided Mezo with much-needed "line" information—*i. e.*, the odds or point spread established to equalize or induce betting on sporting events.

Appellant offered two exhibits for the purpose of showing the ready availability of line information from other sources, but introduced no other evidence. The jury returned a verdict of guilty and the district court[1] sentenced appellant to one year on probation. This timely appeal ensued.

Appellant challenges his conviction on six grounds: (1) the evidence was insufficient to show a violation of 18 U.S.C. § 1084(a); (2) the court erred in its instructions to the jury; (3) the court erred in finding that appellant had waived his right to trial by indictment; (4) the court erred in admitting certain opinion testimony of Agent Holmes; (5) the court erred in denying appellant's motion to dismiss the information for non-compliance with 18 U.S.C. § 2517(5); and (6) the court erred in admitting certain

hearsay testimony. We examine these claims individually.

### A. Sufficiency of the Evidence.

Appellant first contends that the evidence was insufficient to support a conviction under 18 U.S.C. § 1084(a). The statute provides:

(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

Appellant concedes that he used a wire communication facility (the telephone) to transmit information assisting in the placing of bets or wagers. Appellant argues, however, that a person who merely provides line information is not "engaged in the business of betting or wagering."

Appellant relies on a series of cases interpreting 18 U.S.C. § 1955. This statute provides in relevant part:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

A number of cases decided under this statute have held that the mere occasional exchange of line information between two individuals is insufficient to show that they are so interdependent as to be part of a single "illegal gambling business." For example, in *United States v. Guzek*, 527 F.2d 552, 557–58 (8th Cir. 1975), we said:

> [T]he mere placing of bets by one bookmaker with another or the mere furnishing of line information in and of itself may not be sufficient to establish the interdependence of the bookmakers so as to fuse them into one single business for the purpose of counting each of these participants toward the five persons necessary to establish a violation of § 1955.

*See also United States v. Todaro*, 550 F.2d 1300, 1302 (2d Cir.), *cert. denied*, 433 U.S. 909, 97 S.Ct. 2975, 53 L.Ed.2d 1093 (1977); *United States v. McCoy*, 539 F.2d 1050, 1062 (5th Cir. 1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977); *United States v. Leon*, 534 F.2d 667, 677 (6th Cir. 1976); *United States v. Thomas*, 508 F.2d 1200, 1206 (8th Cir.), *cert. denied sub nom. Schullo v. United States*, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 100 (1975). *But cf. United States v. Campagnuolo*, 556 F.2d 1209, 1211 (5th Cir. 1977). Appellant contends that the phrase "conduct[ing] . . an illegal gambling business" used in § 1955 is synonymous with the phrase "being engaged in the business of a betting or wagering" used in § 1084(a) and thus the cases decided under § 1955 should also apply to alleged violations of § 1084(a).

■ We find appellant's argument unpersuasive. The issue in the cases decided under § 1955 is whether the person providing line information has such a close, ongoing, and substantial relationship to the person receiving the information as to make them both participants in a single gambling business. In enacting § 1955, Congress did not intend to make all gambling businesses subject to federal prosecution; rather the statute was "intended to reach only those persons who prey systematically upon our citizens and whose syndicated operations are so continuous and so substantial as to be of national concern . . . ." H.R.Rep. No.1549, 91st Cong. 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4029. *See also United States v. Box*, 530 F.2d 1258, 1264–65 (5th Cir. 1976). The cases relied upon by appellant merely reflect a judicial sensitivity to the limited purpose of Congress in enacting § 1955.

■ In regard to § 1084(a), however, there is nothing to indicate that Congress intended only to punish large-scale gambling businesses. The basis of federal jurisdiction underlying § 1084(a) is the use of interstate communications facilities, which is wholly distinct from the connection between large-scale gambling businesses and the flow of commerce, which provides the jurisdictional basis for § 1955. *See United States v. Sacco*, 491 F.2d 995, 999 (9th Cir. 1974). Thus, the necessary showing of interdependence between individuals involved in an illegal gambling business under § 1955 is not required under § 1084(a). Moreover, § 1084(a) is not limited to persons who are exclusively engaged in the business of betting or wagering and the statute does not distinguish between persons engaged in such business on their own behalf and those engaged in the business on behalf of others. *See Truchinski v. United States*, 393 F.2d 627, 630 (8th Cir.), *cert. denied*, 393 U.S. 831, 89 S.Ct. 104, 21 L.Ed.2d 103 (1968).

Although we reject appellant's blanket assertion that suppliers of line information are outside the scope of § 1084(a), we must nevertheless determine whether the government introduced evidence sufficient to show that appellant was "engaged in the business of betting and wagering." At trial, the government proceeded on the theory that appellant was part of Mezo's bookmaking business and on this aspect of the case the authorities relied upon by appellant are relevant to a prosecution under § 1084(a). They are not controlling, however, because the evidence adduced showed more than a mere occasional exchange of line information between appellant and Mezo.

■ Viewed in the light most favorable to the government, the evidence showed that appellant furnished line information to Mezo on a regular basis; that Mezo relied on this information; that some sort of financial arrangement existed between appellant and Mezo;[2] that appellant was fully aware of Mezo's bookmaking operation;[3] and that accurate and up-to-date line information is of critical importance to any bookmaking operation.

Given this evidence, we conclude that the government has shown that appellant was an important part of the Mezo bookmaking operation and that appellant was indeed "engaged in the business of betting or wagering" within the meaning of § 1084(a).

### B. The Court's Instructions.

■ Appellant contends that the court made two errors in instructing the jury. First, he claims that the court erred in refusing to give the following instruction in relation to the elements of the offense under § 1084(a):

That defendant must have been aware of the statute in question; that he must have known that he was violating the law in providing the line information before he can be found guilty of the offense charged.

Appellant contends that such a specific intent instruction is mandated by *Cohen v. United States*, 378 F.2d 751 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). In *Cohen*, the court held that Congress intended knowledge of the statutory prohibition to be an element of the offense under § 1084(a), but also held that there is a rebuttable presumption that the accused in fact had knowledge of the law. 378 F.2d at 757.

The parties have not cited, nor has our independent research disclosed, any other case which has accepted the *Cohen* rationale. Indeed, in a subsequent case, the Ninth Circuit, in a brief per curiam opinion, upheld a conviction under § 1084 against a challenge that the defendant had no intent to commit a violation of federal law. *See United States v. Swank*, 441 F.2d 264, 265 (9th Cir. 1971).

Given the facts of this case, we have no occasion to decide whether *Cohen* correctly states the law. In *Cohen*, the court approved the following instruction:

Unless and until outweighed by evidence in the case to the contrary, the presumption is that every person knows what the law forbids and what the law requires to be done.

378 F.2d at 756 n.5. In the instant case, the record is devoid of any evidence from which it could be inferred that appellant acted because of ignorance of the law. Thus, there was nothing to rebut the presumption approved in *Cohen*, and failure to give a specific intent instruction, if error at all, was harmless.

■ Appellant's second contention relates to the instruction defining the phrase "engaged in the business of betting or wagering." Appellant offered, and the court rejected, an instruction limiting application of this phrase to "bookmakers"—*i. e.*, persons who accept, exchange, or lay off bets. Instead, the court instructed the jury as follows:

The first of these essential elements that the government must prove is that the defendant engaged in the business of betting or wagering if and when he used the wire communications facility. The term "business" is to be applied according to its usual and ordinary meaning.

An individual engages in the business of betting or wagering if he regularly

---

**2.** In a telephone conversation of December 21, 1976 Mezo told appellant that "Rodney" (apparently co-defendant Rodney Scott Smith) would be going to Las Vegas and would bring appellant "the money." In a telephone conversation of December 24, 1976 Mezo told appellant that he would give appellant "the money" when appellant arrived at Minneapolis.

**3.** On one occasion, appellant flew from Las Vegas to Minneapolis. During that time, he was present at the place where Mezo conducted the bookmaking operation. Appellant answered the phone at this place, and he used Mezo's phone to contact an associate in Las Vegas in an attempt to procure line information for Mezo's use.

performs a function which is an integral part of such business. The individual need not be exclusively engaged in the business nor must he share in the profits or losses of the business. He may be an agent or employee for another person's business, but the function he performs must provide a regular and essential contribution to that business. If an individual performs only an occasional or nonessential service or is a mere bettor or customer, he cannot properly be said to engage in the business.

A business enterprise usually involves a continuing course of conduct by persons associated together for a common purpose.

We find no error in the court's instruction, which is in accord with the law in this circuit. *See Truchinski v. United States, supra,* 393 F.2d at 630.

### C. Waiver of Indictment.

▮ Appellant claims that the trial court erred in overruling his motion to dismiss the information made just prior to the selection of the jury. The crux of appellant's argument is that his waiver of indictment filed in the Nevada district court was not knowingly made because he was unaware that his waiver of indictment was effective even though the plea agreement between himself and the United States was not accepted by the district court. In other words, appellant appears to contend that his waiver of indictment was part and parcel of the rejected plea agreement and that the failure of the plea agreement voided his waiver of indictment.

We reject appellant's contention. We begin by noting that we have serious doubts whether this claim was properly raised below. Appellant did not move to withdraw his waiver of indictment prior to trial. He made no objection to proceeding by way of information until just before the jury was selected and, even then, the question now presented on appeal was only obliquely suggested.

Even assuming that appellant adequately preserved his objection, however, we find his claim to be without merit. The record is entirely barren of any suggestion that the waiver of indictment was conditioned upon the acceptance of the plea agreement by the district court. The waiver, signed by appellant and his former counsel in open court, is unequivocal on its face. The memorandum of the plea agreement submitted to the Nevada district court by the Las Vegas Strike Force Office does not indicate that the waiver was a part of the plea agreement. In addition, appellant's motion to withdraw his nolo contendere plea in Nevada contained no mention of his waiver of indictment. Indeed, the motion affirmatively indicated that, if the court allowed the plea to be withdrawn, the case should be transferred back to the District of Minnesota for trial.

▮ Finally, we note that the mere fact that a district court allows a guilty plea (or in this case a plea of nolo contendere) to be withdrawn does not compel the withdrawal of a waiver of indictment entered in conjunction with that plea. *Bartlett v. United States,* 354 F.2d 745, 749 (8th Cir.), *cert. denied,* 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542 (1966). *Cf. United States v. Hammerman,* 528 F.2d 326, 332 (4th Cir. 1975). In addition, a waiver of indictment entered in conjunction with a Rule 20 transfer in a district other than the district where the offense occurred is nonetheless effective in the latter district. *Boyes v. United States,* 298 F.2d 828, 830 (8th Cir.), *cert. denied,* 370 U.S. 948, 82 S.Ct. 1595, 8 L.Ed.2d 814 (1962).

In view of all these considerations, we hold that the district court properly concluded that appellant effectively waived his right to indictment.

### D. Expert Testimony.

Appellant next contends that the district court erred in allowing Special Agent Holmes to give certain opinion testimony. Appellant does not contest Agent Holmes' qualifications as an expert in the field of gambling; rather, he contends that Agent Holmes' testimony "invaded the province of the jury." Specifically, he objects to

Holmes' testimony about his role in Mezo's bookmaking operation and his knowledge of, and assistance to, Mezo's operation.

■ We reject appellant's contention of error. Rule 704 of the Federal Rules of Evidence provides:

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

One purpose of the Federal Rules of Evidence was to make opinion evidence admissible if it would be of assistance to the trier of fact. Rule 704 is consistent with this purpose by doing away with the "ultimate issue" rule, a rule which Professor Wigmore aptly characterized as "empty rhetoric." 7 J. Wigmore, Evidence § 1920 at 17 (3d ed. 1940).

■ Rule 704 does not, of course, render all expert testimony admissible. Expert testimony must still meet the criterion of helpfulness expressed in Rule 702 and is also subject to exclusion under Rule 403 if its probative value is substantially outweighed by the risks of unfair prejudice, confusion or waste of time. 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 704[01] at 704-9 (1978).

■ Judged under these standards, Agent Holmes' testimony was properly admitted. The structure of a gambling enterprise is not something with which most jurors are familiar. In addition, the business employs a jargon foreign to all those who are not connected with the business. The latter consideration assumes particular importance in a case, such as this one, where the prosecution's evidence consists largely of tape recorded conversations. These conversations, which are at times virtually incomprehensible to the layman, are fraught with meaning to a person familiar with gambling enterprises.

Accordingly, we conclude that Agent Holmes' concededly relevant expert opinion would be helpful to the jury and was thus admissible under Rule 702. Any possibility of undue prejudice was removed by the trial court's careful instructions regarding the juror's role in deciding the facts and weighing the credibility of witnesses, including expert witnesses.

## E. Noncompliance with 18 U.S.C. § 2517(5).

■ Appellant next contends that the trial court erred in allowing the jury to hear the tape recordings of telephone conversations obtained through the wiretap of Mezo's telephone. Specifically, appellant contends that the court order authorizing the wiretap referred only to possible violations of 18 U.S.C. § 1955 and not to possible violations of 18 U.S.C. § 1084(a). Thus, because the wiretap authorization referred to a separate and distinct offense from that on which appellant was tried, he contends that 18 U.S.C. § 2517(5) required the government to seek subsequent judicial approval prior to utilizing this evidence at trial. Because no such authorization was sought, appellant contends that the information charging a § 1084(a) violation should have been dismissed.

Appellant did not raise the issue of noncompliance with § 2517(5) until after the parties had rested at trial. Section 2518(10) of Title 18, which governs motions to suppress intercepted communications, provides that "[s]uch motion[s] shall be made before the trial, hearing or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion." Appellant does not contend that he lacked the opportunity to move to suppress prior to trial, nor does he allege ignorance of the grounds of the motion. Accordingly, his failure to move to suppress the conversations prior to trial amounts to a waiver of the claim of noncompliance with § 2517(5). *See, e. g., United States v. Johnson,* 176 U.S.App.D.C. 179, 188, 539 F.2d 181, 190 (1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L Ed.2d 776 (1977); *United States v. Sisca,* 503 F.2d 1337, 1349 (2d Cir.), *cert. denied,* 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974).

*F. Co-Conspirator Testimony.*

Appellant's final ground for reversal is that the trial court erred in allowing the jury to hear tape recordings of conversations between Mezo and other bookmakers, customers, etc. Appellant contends that this evidence was inadmissible hearsay. The government responds that the statements were admissions of co-conspirators and thus admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence.

We agree with the government. The district court made the appropriate findings regarding the existence of a conspiracy required by *United States v. Bell*, 573 F.2d 1040 (8th Cir. 1978), and our examination of the record shows that the finding has abundant support. Accordingly, the evidence was properly admitted.[4]

The judgment of conviction is affirmed.

---

4. The co-conspirator admission exception embodied in Rule 801(d)(2)(E) applies to cases, like the one at bar, in which the defendant is not formally charged with conspiracy. *United States v. Richardson*, 477 F.2d 1280, 1283 (8th Cir.), *cert. denied*, 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973). *See generally* 4 J. Weinstein & M. Berger, Weinstein's Evidence ' 801(d)(2)(E)[01] at 801–141 & n.3 (1978).