**UNITED STATES of America, Appellee,**

v.

**Cecil DANIELS, Appellant.**

**No. 83–1590.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 30, 1983.

Decided Dec. 12, 1983.

Thomas E. Dittmeier, U.S. Atty., Debra E. Herzog, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Terry Burnet, St. Louis, Mo. (court-appointed), for appellant, Cecil Daniels.

Before BRIGHT, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.

PER CURIAM.

In this direct criminal appeal Cecil Daniels challenges his convictions for four counts of possession of controlled substances with intent to distribute under 21 U.S.C. § 841(a)(1). Daniels asserts two arguments on appeal. First, he contends the district court erred by not excluding a police officer's testimony that it is common for drug dealers to put their property in someone else's name. Secondly, Daniels alleges that he should be granted a new trial because of the prosecution's alleged use of perjured testimony. We affirm the judgment of the district court.[1]

On January 21, 1983 five officers from the St. Louis Police Department were conducting a pre-warrant surveillance of Daniels' apartment. The officers observed Daniels enter the apartment at about 4:30 p.m. Approximately two hours later Daniels left the apartment, got into a 1980 brown Pontiac automobile and drove away, proceeding north on Kingshighway. Officer Thomure testified that when Daniels left he was carrying a small child and a white plastic bag. Three of the officers pursued Daniels in an unmarked car while the other two remained at the apartment. After following Daniels for several blocks, the officers turned on their siren in an attempt to stop him. Daniels then made a left turn off Kingshighway. Two of the pursuing officers testified that they saw Daniels drop a white bag out of the driver's window. The officers slowed down so one of them could jump out to retrieve the white bag while the other two continued their pursuit of Daniels. The white bag was later found to contain capsules of heroin and $3,403.00 in cash. After Daniels stopped his car, the police arrested him and took him back to the apartment. A subsequent search of Daniels' apartment resulted in the seizure of 50 capsules of heroin, 25 grams of cocaine, and 400 tablets of phenobarbitol. Also found was a bag of white powder called Mannitol, a cutting agent, and other narcotics paraphernalia.

In his defense, Daniels denied throwing the white bag out of his car prior to his arrest. He testified that the driver's side window was broken and could not be lowered on the day of his arrest. He further testified that the phenobarbitol was Yvonne Luster's and that she had neglected to pick it up from his apartment. Daniels denied having the other drugs and paraphernalia in his apartment. Three acquaintances of Daniels testified that they had driven Daniels' car on several occasions and found the driver's side window to be broken. An auto parts store owner was called by the defense as an expert witness. He testified that he examined Daniels' car in March of 1983 and observed that the driver's side window, which was power operated, was inoperative. However, on cross-examination he admitted that he could not be positive that the window was broken on the day of the arrest.

A jury found Daniels guilty on all four counts of the indictment. The district court sentenced him to three concurrent fifteen year sentences of imprisonment on three of the counts. On the fourth count the court suspended imposition of sentence on the condition he complete three years probation following imprisonment.

At trial Officer Thomure was allowed to testify that, in his experience in dealing with narcotics, it is common to see cars and apartments registered in names other than those of the actual users and that these "front men" were sometimes women. Thomure had previously testified that the car and apartment Daniels used were registered in Doria Vasser's name. Daniels does not challenge Officer Thomure's qualifications; rather, he alleges that the prejudicial effect of the foregoing testimony outweighed any probative value it may have had. He contends that the jury was improperly allowed to infer that, because Daniels placed his property in someone else's name, he was a drug dealer. The govern-

---

1. The Honorable H. Kenneth Wangelin, United States Senior District Judge, Eastern District of Missouri.

ment contends the testimony was admissible to aid the jury in understanding why Daniels may have registered his property in Vasser's name, to clear up any confusion as to why Daniels was charged with possession of narcotics found in another person's apartment, and also to prove modus operandi under Fed.R.Evid. 404.

Fed.R.Evid. 702 allows a qualified witness to testify in the form of an opinion if the witness's specialized knowledge will help the factfinder to understand the evidence or determine a fact in issue. Rule 704 specifies that the opinion is admissible even if "it embraces an ultimate issue." *United States v. Scavo,* 593 F.2d 837, 844 (8th Cir.1979). Such testimony, however, is still subject to exclusion under Rule 403 if its probative value is substantially outweighed by the risks of unfair prejudice. *Id.* In making the Rule 403 determination we normally "give great deference to the district judge, who saw and heard the evidence." *E.g., United States v. Maestas,* 554 F.2d 834, 836 (8th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1070 (1977). The federal courts have allowed law enforcement officials to testify as experts in order to establish the modus operandi of particular crimes. *See, e.g., United States v. Carson,* 702 F.2d 351 (2d. Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2456–57, 77 L.Ed.2d 1335 (1983) (testimony about how drugs are bought and sold); *United States v. Hensel,* 699 F.2d 18 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983) (expert testimony about general practices of drug smugglers); *United States v. Scavo, supra* (structure of gambling operations); *United States v. Masson,* 582 F.2d 961 (5th Cir.1978) (meaning of terminology used in bookmaking operations); *United States v. Jackson,* 425 F.2d 574 (D.C.Cir.1970) (modus operandi of pickpockets).

We are not unsympathetic to Daniels' claim of prejudice in the admission of Thomure's testimony. Merely because Daniels' property was held in another's name does not necessarily imply that he was involved in dealing in drugs. However, we also recognize that the testimony had probative value. It helped the jury understand why Daniels was being charged for possession of narcotics in property held in another's name and it may have tended to show intent, plan, preparation, or knowledge under Rule 404(b). The methods by which drug dealers attempt to conceal their activities "is not something with which most jurors are familiar." *United States v. Scavo, supra,* at 844; *Hensel, supra,* at 38; *Carson, supra,* at 369. Thus, the question becomes one of balance. The trial court instructed on the role of the jury in deciding the facts and weighing the credibility of witnesses. This acted to reduce or remove any possibility of unfair prejudice. *See United States v. Scavo, supra,* at 844. Therefore, although we recognize the risk of prejudice inherent in Thomure's testimony, in these particular circumstances we cannot say the district court's admission of the testimony was a clear abuse of discretion.

We need not dwell on Daniels' claim that the prosecution used perjured testimony. In order to establish his right to a new trial on such grounds Daniels must show: "first, the use of perjured testimony, and second, knowledge by the prosecuting officials at the time the testimony was used that it was perjured." *Lindhorst v. United States,* 658 F.2d 598, 601 (8th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1024, 71 L.Ed.2d 309 (1982) (*citing United States v. Conzemius,* 611 F.2d 695, 697 (8th Cir. 1979)); *see also United States v. Fiddler,* 688 F.2d 45, 49 (8th Cir.1982); *United States v. Hester,* 489 F.2d 48, 51 (8th Cir. 1973). *Cf. Smith v. Florida,* 410 F.2d 1349 (5th Cir.1969) (is enough if police knew it was perjured testimony). Daniels has not shown that the officer's testimony concerning the white bag being thrown out of the car window was perjured. At most, he has pointed out inconsistencies in testimony. It is for the jury to determine the credibility of witnesses and the weight of the evidence. *United States v. Madden,* 482 F.2d 850, 851 (8th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973). Here, the credibility of the witnesses was fully ar-

gued before the jury and reviewed by the district judge at trial. We can discern no reason for a new trial.

Affirmed.