**UNITED STATES of America, Appellee,**

v.

**Louis BOYKIN, Appellant.**

**No. 92–2125.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Feb. 23, 1993.

Rehearing and Rehearing En Banc Denied April 21, 1993.

Stephen W. Cooper, St. Paul, MN, argued, for appellant.

Carol Ann Needles, Minneapolis, MN, argued (Thomas B. Heffelfinger and Carol A. Needles, Minneapolis, MN, on the brief), for appellee.

Before JOHN R. GIBSON and MAGILL, Circuit Judges, and BOGUE,* Senior District Judge.

MAGILL, Circuit Judge.

Louis Boykin appeals from a jury conviction of several drug charges relating to distribution of crack and powder cocaine, the use of a firearm in connection with a drug trafficking crime, and possession of a firearm by a prior felon. Boykin claims his right to a fair trial was violated by the delayed disclosure of perjury by a witness. He also raises several other claims of error by the district court.[1] We affirm.

## I. BACKGROUND

On April 24, 1991, Gary Pederson, a special agent with the Minnesota Bureau of Criminal Apprehension, acting undercover, approached Roy Prince to purchase powder cocaine from him. Prince indicated that his source was named "Louis" or "Louie," and was sixty-three years old. At Prince's directions, Pederson drove Prince to 1023 Dayton Avenue, in St. Paul, Minnesota. Motor vehicle and license records revealed that appellant Louis Boykin, who was sixty-three years old, lived at this address. Pederson gave Prince $1400 for the cocaine. Prince entered the house with the money, returned to the car, and told Pederson that they would have to return in one hour. When they returned, they parked the car in the alley. Prince left the car and headed toward the house. A few minutes later, Prince returned to the car with one ounce of powder cocaine.

Pederson purchased another ounce of cocaine from Prince on May 7. Prince told Pederson that he would meet his source at a gas station instead of the source's house. Pederson took Prince to the gas station, gave him $1400, and, at Prince's direction, went to Prince's apartment complex. Surveillance officers at the gas station observed Prince get into a vehicle driven by Boykin. Approximately ten minutes later, Prince returned with the cocaine.

On August 27, Mike Wold, a special agent with the Minnesota Bureau of Criminal Apprehension, met Prince and arranged another purchase of cocaine. After Prince placed a call to his source, Wold drove Prince to the same gas station and gave Prince $3100. Wold and another agent observed Prince enter a vehicle driven by Boykin. Boykin and Prince drove to Prince's apartment complex, followed by

---

* The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Wold. Prince left Boykin's vehicle, entered Wold's, and handed Wold approximately two ounces of cocaine.

Wold met with Prince again on August 29 to purchase two ounces of crack cocaine. Prince used Wold's cellular phone to call Louis, using the number 644–3128, which is Boykin's home telephone number. Wold gave Prince $3100 and dropped him off at the Elks Club. While waiting for Prince to return to the vehicle, Wold observed Boykin approach the Elks Club. A few minutes later, Prince returned to Wold's car with approximately two ounces of crack cocaine.

On September 5, Wold met with Prince again to arrange another purchase of crack cocaine. Prince entered Wold's vehicle and called Louis, again using 644–3128. Wold drove Prince to the area where he was to meet Louis and gave him $3100.

Meanwhile, on September 5, surveillance officers observed Boykin leave his house, carrying something in his hand. He entered his vehicle and left the area, followed by surveillance officers in an unmarked car. Other officers in a marked squad car activated the red lights on their car and pulled Boykin over. One of the police officers approached Boykin's vehicle and attempted to get Boykin to leave his vehicle. Boykin drove off, dragging the officer thirty-five feet, and a high speed chase ensued. During the chase, a special agent observed Boykin's arm go out of the window two times.

After Boykin finally was stopped and taken into custody, several items were found on his person and seized. These items included a set of keys, a drivers license listing 1023 Dayton Avenue in St. Paul as Boykin's residence, $3500 in cash, and an electronic digital paging device. Surveillance officers retraced the path of the chase. In one area where Boykin had put his hand out of the window, the officers found two dry and clean baggies containing approximately two ounces of crack cocaine.

Boykin's residence was searched that evening, using keys seized from Boykin to gain access. In the kitchen and living room, agents found materials used in drug distribution, such as baggies; test tubes; inositol, which is a cutting agent for cocaine; a digital gram scale; and a colander and pie tin containing cocaine residue. They also found 82.4 grams of powder cocaine, 7.3 grams of crack cocaine, and more than $1400 in cash. Upstairs in the master bedroom, agents discovered a loaded .357 magnum revolver in a box containing men's clothing and a loaded .357 magnum revolver between the box spring and mattress. A .22 revolver was on a shelf in the master bedroom closet, along with ammunition for all three guns. Also found in the master bedroom was a Department of Treasury check made out to Louis Boykin, 1023 Dayton Avenue. The men's clothing in the bedroom was consistent with the size Boykin wore, and other evidence also indicated Boykin occupied the master bedroom.

Boykin and Prince were both charged with conspiracy to distribute crack cocaine and powder cocaine (Count I); aiding and abetting in the distribution of crack cocaine and powder cocaine (Count II, III, IV, V); and possession with the intent to distribute crack cocaine (Count VI). Boykin also was charged with an additional count of possession with the intent to distribute crack cocaine and powder cocaine (Count VII); the use of a firearm in connection with a drug trafficking crime (Count VIII); and possession of a firearm by a prior felon (Count IX).

Pursuant to a plea agreement, Prince testified against Boykin on behalf of the government, and pled guilty to Counts I and VI. Boykin was convicted by a jury on all counts except Count V, distribution of crack cocaine on August 29, 1991. Boykin was sentenced to 250 months imprisonment to run concurrently on Counts I, II, III, IV, VI, VII, and IX, and 60 months imprisonment to run consecutively on Count VIII. Boykin's conviction and sentence is the subject of this appeal.

## II. DISCUSSION

### A. Firearm Related Charges

Boykin argues that the evidence introduced at trial was insufficient to sustain

the firearm related charges. We view the evidence presented in the light most favorable to the government, and uphold the verdict if there is substantial evidence to support it. *United States v. Schubel,* 912 F.2d 952, 955 (8th Cir.1990). The standard to be applied in determining the sufficiency of the evidence is a strict one, and the finding of guilt should not be overturned lightly. *Id.*

### 1. *Felon in Possession Charge*

■ Boykin contends that the government did not present sufficient evidence that he possessed the firearms found in the search of his home, and therefore did not prove that he violated 18 U.S.C. § 922(g) by being a felon in possession of a firearm.

■ A conviction for violating § 922(g) may be based on constructive or joint possession of the firearm. *See United States v. Woodall,* 938 F.2d 834, 837–38 (8th Cir. 1991). Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself. *See id.* at 838. Constructive possession can be established by a showing that the firearm was seized at the defendant's residence. *United States v. Apker,* 705 F.2d 293, 309 (8th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984).

■ The evidence introduced at trial demonstrated that the house where the firearms were seized was Boykin's residence, and Boykin admitted at the time of his arrest that he lived in that house. Boykin's personal belongings were in the bedroom where the firearms were located, and at trial, Boykin's daughter referred to the bedroom in a manner indicating that Boykin and his wife shared it. Boykin's wife claimed to own the firearms; however, ownership is irrelevant to the issue of possession. *United States v. Hernandez,* 972 F.2d 885, 887 (8th Cir.1992). We find that the evidence was sufficient to establish constructive possession and supports the jury's verdict on this charge.

### 2. *Use of a Gun in Connection With a Drug Trafficking Crime Charge*

■ Boykin also argues that the government did not introduce sufficient evidence that he "used" firearms in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c).

■ The government shows use of a firearm under § 924(c) if they show "presence and availability in light of the evident need." *United States v. LaGuardia,* 774 F.2d 317, 321 (8th Cir.1985). The government does not need to show that the defendant was in actual physical possession of the firearm, or that he brandished or discharged it. *United States v. Watson,* 953 F.2d 406, 409 (8th Cir.1992). This court often has noted the utility of firearms to drug dealers. *See, e.g., United States v. Randle,* 815 F.2d 505, 508 (8th Cir.1987) (firearms used by drug dealers for protection); *LaGuardia,* 774 F.2d at 321 (firearms used by drug dealers for protection or intimidation).

The search of Boykin's home revealed not only the firearms and ammunition, but a distributable amount of powder cocaine, crack cocaine, and drug paraphernalia used in distribution. Additional evidence regarding the drug transactions indicated Boykin operated his drug business out of his home. The drug related evidence was not discovered in the same room as the firearms, but this is not controlling. *See United States v. Sykes,* 977 F.2d 1242, 1248 (8th Cir.1992). The controlling factor is "whether the placement of the gun or guns suggests that they would be quickly available for use in an emergency." *United States v. Lyman,* 892 F.2d 751, 754 n. 4 (8th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). The firearms were loaded and placed in ready availability where Boykin could easily retrieve them to protect his drug operation. We find that the evidence was sufficient to support the jury's verdict on the § 924(c) charge.

### 3. *All Drug Charges*

Boykin argues that a new trial should be granted on all other counts because of prej-

udice suffered when the government failed to stipulate to his prior felony conviction in regard to his § 922(g) charge and because of allegedly improper questions asked by the government regarding his gun charges. We find these claims without merit.

Viewing the evidence in the light most favorable to the government, we find the government introduced substantial evidence to support all firearm related charges.

### B. Expert Testimony

■ Boykin also argues that the district court erred in allowing the government to introduce expert testimony through Lieutenant Fontana, a narcotics police officer.

Fontana testified regarding the modus operandi of drug trafficking. He testified that items found in Boykin's home commonly are used by drug dealers and explained how some of these items were used. He also testified that the amount of drugs found indicated the drugs would be distributed. His testimony included statements that drug dealers use guns for protection. Additionally, the type of firearms found in Boykin's home, their location, and the fact that they were loaded was significant to their usefulness and availability for use in connection with a drug business.

A district court has "discretion to allow law enforcement officials to testify as experts concerning the modus operandi of drug dealers ... in areas concerning activities which are 'not something with which most jurors are familiar.'" *United States v. White*, 890 F.2d 1012, 1014 (8th Cir. 1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990) (quoting *United States v. Daniels*, 723 F.2d 31, 33 (8th Cir.1983)). Additionally, a court can allow testimony in the form of an opinion if the expert's specialized knowledge is helpful to the fact finder "to understand the evidence or determine a fact in issue." *Daniels*, 723 F.2d at 33; *see* Fed.R.Evid. 702. This opinion testimony is admissible even if it embraces an ultimate issue to be decided by the trier of fact. *Id.*

The district court did not err in admitting Fontana's testimony. The testimony covered matters about drug dealing which would be unfamiliar to most jurors, such as how drug paraphernalia is used, and therefore was helpful to the jury to understand the evidence and determine the facts. Boykin also contends that Fontana's testimony regarding police procedure in investigation was improper, but that testimony was elicited to rebut Boykin's attempts to suggest the investigation was handled incorrectly.

■ Boykin argues that Fontana's testimony was unfairly prejudicial. Expert testimony which otherwise would be admissible can be excluded if its probative value is substantially outweighed by the risk of unfair prejudice. *See* Fed.R.Evid. 403. In reviewing a determination under Rule 403, we give "great deference to the district judge, who saw and heard the evidence." *Daniels*, 723 F.2d at 33. We have reviewed the record and find that the probative value of Fontana's testimony is not outweighed by any prejudice. The district court did not abuse its discretion in admitting the expert testimony.

### C. Perjury by Witness

■ Boykin argues that the prosecution and the court knew that a government witness committed perjury, and failed to disclose this perjury, violating Boykin's Sixth Amendment rights to confrontation and a fair trial.

Roy Prince testified for the government as part of a plea agreement. On January 7, 1992, Prince testified on direct examination that he had not used drugs since his arrest in connection with this case. He also testified that he had been tested for drug usage and the test results showed he had not used drugs. Shortly after Boykin began his cross-examination of Prince, the court recessed for two weeks.

During the recess, Boykin subpoenaed Prince's drug testing records from pretrial services. A pretrial services officer contacted the prosecutor on January 21, and informed her that Prince had tested positive for drug usage at some time during his pretrial reporting. The prosecutor attempted to determine the date of the posi-

tive test, but was unable to get this information because the officer in charge of Prince's supervision was out of town and could not be reached.

Boykin's trial reconvened on January 22. At that time, the prosecutor requested to speak to the court in camera[2] to receive a ruling on whether the information regarding the failed drug test should be revealed pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3] The court ruled the information was confidential and did not have to be disclosed, reasoning that the statute governing pretrial services guarantees a person participating in pretrial services confidentiality in all matters. *See* 18 U.S.C. § 3153(c). Information obtained in pretrial services can be used for only very limited matters. *See id.* Boykin's cross-examination of Prince continued and was concluded that day.

 On January 23, the prosecutor finally received information regarding the date that Prince had tested positive for drugs. He had tested positive before he testified on January 7, and thus committed perjury when he stated he had not used drugs and that the drug tests showed he had not used. With permission from Prince's attorney on his behalf, the prose-

cutor disclosed in open court the information concerning Prince's drug tests.[4] The court interrupted the testimony of the witness on the stand and allowed the prosecution to recall Prince to the stand to question him about the perjury.[5] Boykin then cross-examined Prince.

We do not address whether the court correctly ruled that the information did not have to be disclosed as *Brady* material, because the information was disclosed the next day.[6]

The confrontation clause is violated when the defendant shows "he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall,* 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *see United States v. Simmons,* 964 F.2d 763 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992).

Boykin cites to *Simmons* in support of his claim that his right to confrontation was violated. *Simmons,* however, is inapposite to this case. In *Simmons,* a witness perjured herself regarding whether she was tested for drugs as a part of probation,

---

**2.** We note that it is common practice for the court to view in camera information which the prosecutor possesses to determine whether it is *Brady* material which must be disclosed, *see, e.g., Layton v. South Dakota,* 918 F.2d 739, 742 (8th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1429, 113 L.Ed.2d 480 (1991); *United States v. Civella,* 666 F.2d 1122, 1130 (8th Cir. 1981); *United States v. Singer,* 660 F.2d 1295, 1308 (8th Cir.1981), *cert. denied,* 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982), and the discussion itself was proper.

**3.** Under *Brady,* evidence held by the prosecutor which is favorable to the accused and material to guilt or punishment must be disclosed to the defendant upon demand. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196.

**4.** At the time of the court's ruling on January 22, neither the prosecutor or the court knew if Prince had used the drugs before he testified on January 7, in which case he would have committed perjury, or if he had used them during the time the court was in recess, in which case he would not have committed perjury. Boykin stated at oral argument that the perjury should have been revealed as soon as it was discovered.

We note that the prosecutor did reveal the perjury to Boykin as soon as she could determine the date of the failed drug test, and established that Prince indeed had committed perjury.

**5.** Boykin admitted during trial that the trial court's decision to allow the prosecution to question Prince first about the perjury was in the court's discretion, and did not raise an objection of error to this procedure. At oral argument, the prosecutor likened discovery of the perjury to discovery of new evidence to support the position that this procedure was correct. We agree. We also note that the First Circuit has found that a court was well within its discretion when following this procedure in a factually similar case. *United States v. Osorio,* 929 F.2d 753, 763 (1st Cir.1991).

**6.** We note that this case involves disclosure of *Brady* information during trial, not after trial. This court has held that "[t]he rule of *Brady* is limited to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir.1986). *Brady,* therefore, was not violated by the delayed disclosure.

and the perjury was not revealed until after the trial was over. *Simmons*, 964 F.2d at 769. The court found that, although it was harmless error, the defendant's right to confrontation was violated because the defendant lacked the knowledge during trial that was necessary to effectively impeach the witness. *Id.* at 770. In the case before us, however, Prince's perjury was revealed before the trial was over, he was recalled to the witness stand, and Boykin "had the opportunity to expose to the jury facts that would allow the jury to draw inferences regarding [Prince's] credibility." *Id.* Boykin's right to confrontation was not violated.

■■■■ To determine whether Boykin's right to a fair trial was violated,[7] we weigh any prejudice created by the lapse of time before Prince's perjury was revealed against the evidence of Boykin's guilt. *Cf. United States v. Moore*, 911 F.2d 140, 143 (8th Cir.1990) (stating court will juxtapose trial context of error and prejudice from error against strength of evidence).

Boykin argues that the delayed disclosure prevented him from conducting an effective cross-examination and tainted the trial. We disagree. An examination of the record discloses that Boykin skillfully and effectively attacked Prince's credibility. Boykin's questioning on the cross-examination conducted before the perjury was revealed touched on several areas affecting Prince's credibility, including a plea agreement Prince had with the government, possible leniency he would receive in return for testifying, lying on welfare forms in order to receive more money, past history as a "con artist," and drug use history. After the perjury was revealed, Boykin thoroughly cross-examined Prince concerning the perjury. Through his questioning, Boykin brought to the jury's attention that Prince had lied under oath, and that he had told these lies at the same time he gave the testimony upon which the prosecution was relying to convict Boykin. In his closing statement to the jury, Boykin pointedly reminded the jury of the perjury. He also reinforced the jury's memory of the perjury by reminding it that Prince had to be recalled to the stand to admit he had lied. Boykin effectively used the perjury to attack Prince's credibility.

Boykin suffered little prejudice from the delay. He was able effectively to cross-examine Prince regarding the perjury and, additionally, argue to the jury during closing arguments that their knowledge of the perjury should affect their determination of Prince's credibility. We note that the weight of the evidence against Boykin was quite strong, and was based not only on Prince's testimony, but also on the testimony of the special agents who had conducted deals with Boykin through Prince and on evidence found in Boykin's home. Boykin's right to a fair trial was not violated.

### D. Other Claims

Boykin also claims: (1) the district court abused its discretion in refusing to allow severance of defendant's Counts VII, VIII and IX from the remaining counts; (2) the district court erred when it found probable cause existed for the search of Boykin's home; (3) the jury instruction regarding use of a firearm during a drug trafficking crime and the jury instruction regarding the proper use of evidence regarding the defendant's prior record were misleading and inaccurate; and (4) the district court misapplied the Sentencing Guidelines by imposing a higher sentence for selling crack cocaine rather than powder cocaine, not giving Boykin a reduction for acceptance of responsibility, failing to consider Boykin's age, and sentencing Boykin for distributing crack cocaine despite his claim of entrapment. We have reviewed these claims and find them without merit.

---

7. Boykin cites to a factually similar case, *United States v. Osorio,* 929 F.2d 753 (1st Cir.1991), to argue that his right to a fair trial was violated. In *Osorio,* a witness for the prosecution perjured himself. When the prosecutor discovered the perjury, the prosecutor revealed the perjury to the trial court and defense counsel. The prosecutor recalled the witness to elicit information revealing the perjury, and defense counsel then cross-examined the witness. The First Circuit found the defendant was not prejudiced by the late disclosure of the perjury, and therefore a new trial was not warranted. *Osorio,* 929 F.2d at 758–60.

### III. CONCLUSION

We find no error of law, no abuse of discretion, and no constitutional error. Therefore, we affirm.