

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 2, 1995

Honorable Kenny Marchant
Chair
Financial Institution Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-344

Re: Whether persons may play and bet on card games using computers with modems or other transmission devices and related questions (RQ-763)

Dear Representative Marchant:

You ask:

> (1) May two or more persons, each using a separate personal computer and modem or other data transmission device in a private place, play a card game with each other and bet on the outcome of the card game?

> (2) May a third party operating a bulletin board service assist persons in playing the card games located on that bulletin board service and charge a fee for the amount of computer time and processing charges used by the persons playing the game?

> (3) May a third party operating a bulletin board service act as the custodian of money placed in escrow with that bulletin board service by users of the service for the specific purpose of playing card games with other users of the service?

You qualify your questions as follows:

> For the purpose of this request, "bet" and "private place" have the meanings assigned [to] those terms by Section 47.01, Penal Code, and the term "bulletin board service" means an on-line computer service that allows a person to use the person's personal computer and modem to connect to the service and that offers the person the ability to play card games with other users of the service. In addition, any actions taken by any party in this request are presumed to be taken entirely in Texas by Texas residents.

Section 47.01(1), Penal Code, provides, with exceptions which do not appear to be relevant here, that for purposes of chapter 47, "bet" "means an agreement to win or lose something of value solely or partially by chance." Subsection (8) defines "private place" as "a place to which the public does not have access, and excludes, among other places, streets, highways, restaurants, taverns, nightclubs, schools, hospitals, and common

areas of apartment houses, hotels, motels, office buildings, transportation facilities, and shops."

Section 47.02(a)(3) provides that "[a] person commits an offense if he . . . plays and bets for money or other thing of value at any game played with cards, dice, balls, or any other gambling device." Subsection (b), however, provides that it is a defense to prosecution under the section that

(1) the actor engaged in gambling in a private place;

(2) no person received any economic benefit other than personal winnings; and

(3) except for the advantage of skill or luck, the risks of losing and the chances of winning [the game] were the same for all participants.

The activities described in your first question would appear to be within the kind of playing and betting described in subsection (a)(3) of section 47.02. The question is whether the defense to prosecution set out in subsection (b) could be effectively raised. We do not believe that the facts you stipulate--that the actors are acting in "private places," within the Penal Code definition, and communicating bets through data transmission devices--resolve whether the elements of the defense are met. Even assuming that the risks "were the same for all participants," if the public generally, or a significant number of others, had access to the games, such access would, we believe, defeat a claim that the actors "engaged in gambling in a private place."

Whether a place is private for such purposes has been determined by the scope of access by others. *See, e.g., Comer v. State*, 10 S.W. 106 (1889) (private room at inn); *Heath v. State*, 276 S.W.2d 534 (Tex. Crim. App. 1955) ("We do not think that one might circumvent the law [pertaining to 'gambling houses'] by the simple expediency of extending invitations"). *See generally* Howard J. Alperin, Annotation, *Gambling in Private Residence as Prohibited or Permitted by Anti-Gambling Laws*, 27 A.L.R.3d 1074 (1969). Just as a private residence would not be a "private place" for purposes of the defense if the public had access to gambling there, neither would it be consistent with the defense here if, for example, anyone who knew the proper "telephone number" and had a computer with a modem could join the games you refer to. *See, e.g., Morgan v. State*, 60 S.W. 763, 764 (Tex. Crim. App. 1901) (private residence); *People v. Weithoff*, 16 N.W. 442 (Mich. 1883) (physical presence of bettors at game not required). However, determining whether the scope of such access here would defeat the defense would require fact finding.

Also, if there is a charge attributable to the transmissions by which the players communicate, it would appear that other persons would also receive an economic benefit from the games, thus defeating the second element of the defense. *See* Attorney General

Letter Opinion No. 90-88 (1990) (no defense where telephoned bets made using either a credit card or a 900-number).

Where the defense did not obtain, and the actors were thus "gambling" in violation of section 47.02, we think that on particular facts they might also be prosecuted under other sections of chapter 47. *See* Penal Code §§ 47.03 ("Gambling Promotion"), .04 ("Keeping a Gambling Place"), .05 ("Communicating Gambling Information"), .06 ("Possession of Gambling Device, Equipment or Paraphernalia"). We note that on proper facts, courts have upheld, against double jeopardy arguments, convictions under more than one chapter 47 section arising from one series of events. *See, e.g., Rush v. State*, 576 S.W.2d 628 (Tex. Crim. App. 1978).[1]

Also, where the activity was an offense under the Penal Code, federal law criminalizing "transmission of wagering information" in interstate commerce by one "engaged in the business of betting or wagering," 18 U.S.C. § 1084, could also apply. That the activities in question take place entirely in Texas, as you stipulate, may not in all cases be sufficient to keep them from having an interstate character under that statute. *See United States v. Yaquinta*, 204 F. Supp. 276 (N.D.W. Va. 1962) (where part of telephone facilities used for call between points in state were located in another state, transmission was in interstate commerce for purposes of section 1084). Even if the transmissions are found to be in interstate commerce, however, determining whether the actors in your scenario would be "engaged in the business" of gambling would also require more extensive fact finding. For instance, cases under section 1084 indicate that while the provisions do not embrace "social betting," a person may be "in the business" under the statute even if only "in business" on his own behalf and even if gambling is not his exclusive business. *See, e.g., United States v. Baborian*, 528 F. Supp. 324 (D.R.I. 1981); *United States v. Scavo*, 593 F.2d 837 (8th Cir. 1979).[2]

Your second scenario, where a third party, for a fee, operates a "bulletin board" service to "assist" persons in playing "games located on that bulletin board service," in our opinion implicates sections 47.03, ("Gambling Promotion"), 47.04 ("Keeping a Gambling Place")," 47.05, ("Communicating Gambling Information"), and 47.06, ("Possession of Gambling Device, Equipment, or Paraphernalia"), *if the players bet on the card games.*

---

[1]On the other hand, we note that the facially overlapping nature of such provisions has in the past been one basis for successful contentions that the provisions were unconstitutionally vague, that is, that they did not sufficiently apprise actors whether contemplated conduct was criminalized thereunder. *See, e.g., Adley v. State*, 718 S.W.2d 682 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 815 (1986). Since issues both as to the adequacy of notice given by a penal provision, and as to which specific provisions among somewhat overlapping ones are more appropriate for prosecution, depend ultimately on the facts of the particular case, we do not attempt to resolve these questions here.

[2]If the activities rise to the level of a "gambling business" involving five or more persons, the federal provisions in 18 U.S.C. § 1955, "Prohibition of Illegal Gambling Businesses," could also be implicated. Notably, interstate activity is not expressly a necessary element to the section 1955 offense. Section 1955 is discussed in more detail below in relation to your second and third questions.

The term "gambling place" is integral to the portions of sections 47.03 and 47.04 we think are implicated here. Section 47.01(3) defines "gambling place" as "any real estate, building, room . . . vehicle, or other property whatsoever, one of the uses of which is the making or settling of bets." Section 47.03 makes it an offense for a person knowingly or intentionally to "operate[] or participate[] in the earnings of a gambling place." Section 47.04 makes it an offense if he "knowingly uses or permits another [person] to use as a gambling place . . . . property . . . owned by him or under his control." Section 47.04 provides the same defense to prosecution under that section as does section 47.02, "Gambling," discussed above, but since you stipulate that the operator of the bulletin board service receives a fee apart from "personal winnings," the defense would not apply here.

That the players may not be present at the "gambling place" here does not we think take these activities out of the provisions of sections 47.03 and 47.04. Notably, the court in *State v. Taylor*, 805 S.W.2d 440 (Tex. Crim. App. 1991), found that a place used for the "telephonic receiving of bets" was a "gambling place." We see no distinction here albeit the transmission devices may also include computers and modems or other means of transmission than just telephones and telephone lines. The main hurdle to prosecution, on the facts you stipulate, would rather be proving the requisite knowledge or intent: in effect, proving that the service operator *knew* that the players were "betting" something of value on the games. Assuming such knowledge could be shown, we believe the activities you describe violate either or both of sections 47.03 and section 47.04.

We note too that, assuming the requisite knowledge on the service operator's part, section 47.05, "Communicating Gambling Information" making it an offense, "with the intent to further gambling," to knowingly communicate "information as to bets" or to "maintain[] equipment for the transmission or receipt of such information," may be violated as well. It is not wholly clear to us, however, from your description of the "bulletin board" service here as "assisting persons in playing the card games located on that bulletin board service," precisely what the bulletin board devices do. Similarly, again assuming the requisite knowledge, and depending on how the "bulletin board" actually works, the activities could fall within the broad language of section 47.06, which in subsection (c) makes it an offense "with the intent to further gambling" to knowingly own . . . or possess gambling paraphernalia."[3] "Gambling paraphernalia" is broadly defined in section 47.01(6) as "any . . . apparatus by means of which bets . . . may be recorded or registered" or "any record, ticket, certificate, bill, slip, . . . or other means of carrying on bookmaking, wagering pools, . . . policy, or similar games." Depending on the facts, we believe that charges might be brought under more than one of these sections for the operations you ask about. *See Rush*, 576 S.W.2d 628.

---

[3]Section 47.06 sets out the same defense as section 47.04, which, again, because of the fee charged by the service, would not apply here.

In your third scenario you add the element that the operator of the bulletin board service "acts as custodian of money" placed with him by service users for purposes of their play. Section 47.03, "Gambling Promotion," discussed above with respect to your second scenario, also makes it an offense, in subsection (a)(3), if a person "for gain, becomes a custodian of anything of value bet or offered to be bet." We assume here that you mean that the operator acts as custodian of money from which bets are to be paid, but you do not indicate whether he does this "for gain." If he does, we believe that this activity comes within the offense described in subsection (a)(3). In any case, his acting as custodian, whether "for gain" or not, would certainly be a strong indication that the service operator *knew* the players were betting, thus supplying the requisite knowledge element with which, as we concluded above, mere operation of the bulletin board service would itself come within one or more of the chapter 47 penal provisions.

Finally, given the illegality of these activities under state law, federal law at 18 U.S.C. § 1084, criminalizing "transmission of wagering information" in interstate commerce by one "engaged in the business of betting or wagering," could also apply, as well as the provisions of 18 U.S.C. § 1955, "Prohibition of Illegal Gambling Businesses." As noted above in our discussion regarding your first question, while it is an element of the section 1084 offense that the transmission be "in interstate commerce," even transmissions from one place in Texas to another might, on proper facts, be found to within the section's ambit. For the section 1955 offense, five or more persons must be involved in a "gambling business" illegal under state law; the section does not require specific proof that the activities were in interstate commerce. *See, e.g., United States v. Meese*, 479 F.2d 41 (8th Cir. 1973). Both sections have generally been broadly construed. For example, neither requires that the actors have themselves placed bets. *Cohen v. United States*, 378 F.2d 751 (9th Cir.) (section 1084 includes "assisting" in placing of bets), *cert. denied*, 389 U.S. 897 (1967); *United States v. Hawes*, 529 F.2d 472 (5th Cir. 1976) (section 1955 defendants need not themselves have gambled).

## S U M M A R Y

Where two or more persons, each using a separate personal computer and modem or other data transmission device in a private place, play a card game with each other and bet on the outcome of the card game, the activities would be illegal under the gambling provisions set out in chapter 47 of the Penal Code unless there was no "public" access to the games, no one benefited other than by personal winnings, and the risk of winning or losing was the same for all participants. A third party's operation of a bulletin board service, by means of which he knowingly assisted persons in playing and betting on card games located on that bulletin board service and charged for the services used by the persons playing the game, would violate one or more of the penal provisions of chapter 47, Penal Code.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by William Walker
Assistant Attorney General