TRANSCLEAN CORPORATION, James P. Viken, Jon A. Lang, and Donald E. Johnson, Plaintiffs,

v.

BRIDGEWOOD SERVICES, INC., Defendant.

No. Civ. 97–2298(RLE).

United States District Court, D. Minnesota.

April 21, 2000.

Jon S. Swierzewski, Alan Marshall Anderson, Renee L. Jackson, Christopher K. Larus, Larkin Hoffman Daly & Lindgren, Bloomington, MN, for Transclean Corp., James P. Viken, Jon A. Lang, Donald E. Johnson.

Karl L. Cambronne, Becky L. Erickson, Chestnut & Cambronne, Minneapolis, MN, Warren E. Olsen, Fitzpatrick Cella Harper & Scinto, Washington, DC, for T–Tech Industries, Inc.

Karl L. Cambronne, Chestnut & Cambronne, Minneapolis, MN, Warren E. Olsen, Brian Klock, Fitzpatrick Cella Harper & Scinto, Washington, DC, for Bridgewood Services, Inc.

## ORDER

ERICKSON, United States Magistrate Judge.

### I. *Introduction*

This matter came before the undersigned United States Magistrate Judge, pursuant to the consent of the parties, as authorized by Title 28 U.S.C. § 636(c), upon the parties' Motions *in limine.* Deeming oral argument to be unnecessary, we have considered these Motions on the parties' written submissions. For reasons which follow, we deny the Motion of the Plaintiff Transclean Corporation ("Transclean") to Exclude Evidence of Inequitable Conduct, to Exclude Sample Machines and Photographs, to Exclude Evidence Based upon the Summary Judgment Memorandum Order, and to Exclude Exhibit F of the Memmolo Declaration, we grant Transclean's Motion to Exclude Evidence of Other Infringement and Other Lawsuits, to Exclude the Supplemental Expert Report of Eugene L. Johnson, and to Exclude Evidence of Other Advertising and Memmolo's Opinion About Advertising, and we grant in part, its Motion to Strike 282 Notice of Prior Art.

## II. Discussion

A. Plaintiffs' Motion to Exclude Evidence of Inequitable Conduct.

In this Motion *in limine*, Transclean seeks to prevent the introduction of evidence, concerning the inequitable conduct defense of the Defendants (hereinafter "Bridgewood"). Transclean contends that their patent—U.S.Patent No. 5,318,080 (the "Viken Patent")—which was issued to the Plaintiff James Viken ("Viken")—was infringed upon by a similar device, which was manufactured by Bridgewood, and which was patented by Jerry Burman ("Burman"), on June 4, 1996, as U.S.Patent No. 5,522,474 (the "Burman Patent"). Bridgewood denies that its device infringed the Viken Patent, and affirmatively maintains that the Viken Patent is invalid, or unenforceable, on several grounds—one of which being the alleged inequitable conduct of Viken, in securing the Viken Patent. As a result, while Transclean seeks the Court's intervention in determining whether the issue of inequitable conduct is meritorious—albeit, outside of the presence of the Jury—Bridgewood proposes that we enlist the assistance of the Jury, through the means of Special Interrogatories, so as to aid our ultimate resolution of this issue.

■ In light of the fact that patent prosecutions are secret, non-adversarial, *ex parte* proceedings, inventors, registered patent agents, and registered patent attorneys, are held to a high ethical standard in their dealings with the Patent Office ("PTO"), and particularly with respect to the disclosure of their knowledge, concerning the state of the art, at the time of the patent application. Patent applicants, and their agents, "are required to prosecute patent applications in the PTO with candor, good faith, and honesty." *Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed.Cir.1999), cert. denied, — U.S. —, 120 S.Ct. 178, 145 L.Ed.2d 150 (1999); see also, *37 C.F.R. § 1.56*. A breach of this duty constitutes inequitable conduct, *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir.1995), which, when proven as an affirmative defense to infringement, renders an entire patent unenforceable. *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1332 (Fed.Cir.1998).

■ Since *Kingsdown Medical Consultants, Inc. v. Hollister, Inc.*, 863 F.2d 867 (Fed.Cir.1988), the Federal Circuit has made it clear that inequitable conduct is an equitable matter, that is committed to the discretion of the Trial Court. In *Paragon Podiatry Lab. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993), the Federal Circuit confirmed that, since inequitable conduct was an equitable doctrine, there was no right to a Jury Trial. See also, *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed.Cir.1987), quoting *General Tire & Rubber Co. v. Watson-Bowman Assocs., Inc.*, 74 F.R.D. 139, 141 (D.Del.1977). Nevertheless, a number of cases have recognized that a Trial Judge, in his or her discretion, is free to seek Jury guidance on the resolution of factual issues, which bear upon the defense, through the use of special Jury Verdict forms, and/or Interrogatories, and that the parties can consent to having a Jury resolve the issue. See, *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed.Cir.1996).

■ The Federal Circuit has recognized a variety of ways in which a District Court may resolve an issue of inequitable conduct during a Jury Trial. *Id.* As an equitable defense, the determination of inequitable conduct is committed to the discretion of the Trial Court, and reviewable on appeal for abuse of discretion. *Id.*; see also *Baxter Healthcare v. Spectramed, Inc.*, 49 F.3d 1575, 1584 (Fed.Cir.1995). However, as we have noted, the Trial Judge may properly submit the issue to the Jury in the form of Special Interrogatories under Rule 49(a), Federal Rules of Civil Procedure, on the factual issues of materiality and intent. See, *Hebert v. Lisle Corp.*, supra at 1114. Finally, with the consent of the parties, the Court may also submit the ultimate question of inequitable

conduct to the Jury. *Id.;* see also, *Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 541 (Fed.Cir.1990), cert. denied, 500 U.S. 918, 111 S.Ct. 2017, 114 L.Ed.2d 103 (wherein the parties agreed to submit the ultimate issue of inequitable conduct to the Jury for final determination).

Here, the parties have not consented to the Jury's resolution of the factual validity of Bridgewood's inequitable conduct defense. Although Transclean argues that, "[b]ecause there is no right to a jury decision on the issue of inequitable conduct, underlying evidence related to the defense must be presented outside the jury,"see, *Plaintiffs' Memorandum in Support of Motion to Exclude Evidence of Inequitable Conduct,* at 2, we have found no authority which categorically imposes any such procedural requirement.

In our view, after having reviewed the pertinent authorities on point, absent a likelihood of prejudice, the preferable Trial procedure, so as to minimize disruption in the order of proof, and to preserve the ultimate role of the Jury as the factfinder, would be to submit Special Interrogatories, and Jury Instructions, to the Jury, on the facts of materiality, and intent, so that the Jury may advise us on their view as to the proper resolution of those quintessentially factual issues. See, *Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 79 L.Ed. 603 (1935) (emphasizing importance of Jury as a factfinding body). However, Transclean is concerned that, if the Jury is exposed to evidence of Viken's inequitable conduct, it may render a Verdict against them, simply because of the asserted misconduct of Viken, without considering the relevant evidence concerning the other causes of action. *Id.* Therefore, Transclean asks us to prohibit the introduction of inequitable conduct evidence, under Rule 403, Federal Rules of Evidence.

Rule 403 allows evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Accordingly, Rule 403 requires the Court to balance the probative value, and the need for the evidence, against the harm that is likely to result from its admission. Within this context, unfair prejudice " 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *Block v. R.H. Macy & Co., Inc.,* 712 F.2d 1241, 1244 (8th Cir.1983), quoting Advisory Committee Notes to Rule 403 (1972).

As a general rule, the balance, under Rule 403, should be struck in favor of admission. *Block v. R.H. Macy & Co., Inc.,* supra at 1244 ("In weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission."), quoting *United States v. Dennis,* 625 F.2d 782, 797 (8th Cir.1980). Here, the Jury's advisory factfinding will be limited by specific Interrogatories, and Jury Instructions. Therefore, the risk that the Jury's findings, on the merits of Transclean's adjoining legal claims, will be based upon evidence of inequitable conduct, seems inappreciable. Quite simply, the evidence in question would not appear to be so opprobrious as to impair the capacity of the Jury to resolve the issues, which are entrusted to its factfinding, based upon the facts and the law, as provided in the Court's charge to the Jury.

Moreover, we have considerable concern that a bifurcation of the inequitable conduct issue will artificially balkanize the evidence in such a way as to impede a coherent presentation of the facts to the Jury, and result in a considerable amount of duplicate testimony. The Jury will be introduced, by one or both parties, to the patent application process, and we think it to be an inadvisable use of judicial resources to segregate certain factual issues, which may require the recalling of witnesses, for a separate evidentiary Hearing to the Court. See, *Rolscreen Co. v. Pella*

*Products of St. Louis, Inc.*, 64 F.3d 1202, 1209 (8th Cir.1995) (noting that Judges should be given considerable latitude in deciding the most efficient and effective method of disposing of issues in a case, so long as a party is not prejudiced); *York v. American Tel. & Tel. Co.*, 95 F.3d 948, 957 (10th Cir.1996) (decision to bifurcate Trial must be made with regard to judicial efficiency and judicial resources); *Morse/Diesel v. Fidelity Deposit Co. of Maryland*, 763 F.Supp. 28, 35 (S.D.N.Y.1991), citing Rule 42(b), Federal Rules of Civil Procedure, Advisory Committee Note (stating that the separation of issues for Trial is not to be routinely ordered); *Organic Chemicals, Inc. v. Carroll Products, Inc.*, 86 F.R.D. 468, 470 (W.D.Mich.1980) (stating that, in deciding whether to bifurcate, "courts often try to establish if the issues would involve the same witnesses or not.").

Consequently, in our view, there is no compelling basis to exclude, from the Jury's hearing, evidence of Viken's assertedly inequitable conduct, under Rule 403, and Transclean's Motion to Exclude Evidence of Inequitable Conduct is, therefore, denied.[1]

**B.** *Plaintiffs' Motion to Exclude Evidence of Other Infringement and other Law Suits.*

■ Transclean also seeks to preclude the introduction of evidence, by Bridgewood, which relates to the infringement of the Viken Patent by other potential infringers, to other lawsuits based upon an asserted infringement of the Viken Patent, and to other automatic transmission fluid changing devices which may, or may not, infringe the Viken Patent. In response, Bridgewood asserts:

TRANSCLEAN has neither pleaded nor offered any evidence that could justify a finding that each sale of a T-TECH

machine was necessarily a sale that would otherwise have gone to TRANSCLEAN. TRANSCLEAN now also makes the express admission that it is not seeking patent damages calculated by reference to any alleged "lost profits" of TRANSCLEAN. (see Transclean Memorandum p. 3, fn. 1).

BRIDGEWOOD therefore agrees, on relevance grounds, that its defense to the patent infringement issues does not require evidence tending to prove the availability of "non-infringing" substitutes or whether any particular third party device is the subject of an infringement law suit.

See, *Defendant's Statement Re Plaintiffs' Motion to Exclude Evidence of Other Infringement and Other Lawsuits*, at 1.

Despite this concession, in its Memorandum, Bridgewood "reserves the right to introduce evidence regarding the total fluid exchange function which is performed by any automatic transmission fluid exchanging device, including *** those made by Wynn Oil or BG Manufacturing, *** [and] also reserves the right to introduce any evidence regarding the advertising used to promote any automatic transmission fluid changing device." *Id.* According to Bridgewood, such evidence is relevant, and may be required, to show a context for those advertisements which Transclean has alleged to be false or misleading. We disagree.

With certain exceptions, all relevant evidence is admissible at Trial. *Rule 402, Federal Rules of Evidence.* Evidence is "relevant," if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Rule 401, Federal Rules of Evidence.* Further, as

---

**1.** Transclean suggests, in a footnote in their Motion papers, that the Court, at the final Pretrial Hearing, had already ruled in favor of the bifurcation Transclean now seeks. We do not join in that suggestion. The issue of bifurcation is one which the Court would need

to consider with the assistance of legal briefing but, in any event, if we had improvidently suggested an ultimate ruling on that issue—as suggested by Transclean—our prediction would have been in error, now that we have had occasion to consider the issue more fully.

stated previously, under Rule 403, evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Rule 403, Federal Rules of Evidence.*

Here, Bridgewood has failed to present any reasonable justification for admitting evidence as to fluid exchanging devices, and third party advertisements, which are not affiliated with this litigation. Although Bridgewood cites *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1182 (8th Cir. 1998), for the proposition that such evidence is necessary to demonstrate a context for its advertisements, we find that the text of that opinion does not support Bridgewood's interpretation. There, the Court noted that, "[w]here a commercial claim is not literally false but is misleading in context, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *Id.* at 1182, citing *William H. Morris Co. v. Group W, Inc.,* 66 F.3d 255, 258 (9th Cir. 1995) (per curiam); *Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2nd Cir.1992). However, the Court went on to state:

> If a plaintiff does not prove the claim to be literally false, he must prove that it is deceptive or misleading, which depends on the message that is conveyed to consumers. Public reaction is the measure of a commercial's impact. *** [T]he success of the claim usually turns on the persuasiveness of a consumer survey.

*United Indus. Corp. v. Clorox Co.,* supra at 1182–1183. As such, *United Indus. Corp. v. Clorox Co.* reflects that the context of an allegedly false advertisement is only relevant to aid in the determination of whether the advertising actually conveyed a false, implied message, and thereby deceived a significant portion of the recipi-

ents who observed that advertisement. See also, *Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.,* 19 F.3d 125, 129–30 (3rd Cir.1994); *Johnson & Johnson * Merck Consumer Pharmaceuticals Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2nd Cir.1992) (requiring plaintiff to demonstrate that "a statistically significant part of the commercial audience holds the false belief allegedly communicated by the challenged advertisement.").

Here, Bridgewood has failed to establish a nexus between the content of advertisements, which are totally unrelated to this litigation, and the question of whether the consumers, who observed Bridgewood's allegedly false advertisements, actually construed a false, implied message, and were, thereby, deceived. Consequently, Bridgewood should be precluded from introducing, at Trial, evidence regarding the total fluid exchange function which is performed by automatic transmission fluid changing devices, other than the TFX–5000, or the advertising used to promoted such automatic transmission fluid changing devices, as it is not relevant under Rule 401.

Furthermore, even if some marginal nexus were present, the probative value of this evidence is substantially outweighed by the danger that it will mislead the Jury, by diverting their concentration from the central issue—namely, whether Bridgewood's advertisements conveyed a false message to those who received it. As a consequence, we find that this same evidence is properly proscribed under Rule 403. As such, Transclean's Motion to Exclude Evidence of Other Infringement and Other Lawsuits is granted.

C. *Plaintiffs' Motion to Exclude the Supplemental Expert Report of Eugene L. Johnson.*

In this Motion, Transclean asks that we exclude the most recent, supplemental report of Bridgewood's expert, Eugene L. Johnson ("Johnson"), as being untimely.

Under our Pretrial Order, the amended deadline for the submission of all expert disclosures, including any written expert reports, was August 31, 1998. See, *Stipulation and Order, dated August 17, 1998 [Docket No. 39]*. As pertinent to this Motion, Transclean argues as follows:

On August 31, 1998, Bridgewood produced a written expert report from Eugene L. Johnson, a patent attorney who expressed certain opinions about the merits of the parties' competing claims. On October 13, 1998, counsel for the Plaintiffs deposed Johnson based on his August 31 expert report. Subsequently, on November 17, 1998, Bridgewood produced a document that was characterized as a "supplemental" report prepared by Johnson. This later document set forth several new opinions upon which Bridgewood sought to rely in connection with the parties' cross-motions for summary judgment in the spring of 1999.

*Plaintiffs' Memorandum in Support of Motion to Exclude Supplemental Expert Report of Eugene L. Johnson*, at 2.

After reviewing Johnson's supplemental report, we struck it from the Record, in accordance with Rules 16(f) and 37(c)(1), Federal Rules of Civil Procedure, because of its untimeliness. See, *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F.Supp.2d 1045, 1064 (D.Minn.1999).

Subsequently, on March 29, 2000, Bridgewood produced yet another supplement to the August 31, 1998, report of Johnson. This report primarily discloses Johnson's opinions with respect to the "free discharge" experiments for changing automatic transmission fluid, that were described in the Affidavit of Viken dated March 19, 1999. See, *Supplement to August 31, 1998 Declaration of Eugene L. Johnson*. According to Bridgewood, we should ignore the untimeliness of this second supplemental disclosure of Johnson, since Viken's Affidavit was unavailable prior to the deadline of August 31, 1998, for expert disclosures, and because its late submission would result in no prejudice to Transclean.

As was the case with the exclusion of Johnson's first supplemental report, we are, again, compelled to analyze the requested exclusion with a critical consideration being the prevention of unfair surprise. See, *Sylla–Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995), cert. denied, 516 U.S. 822, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995). Under Rule 37(c)(1), "[a] party that *** fails to disclose information required by Rule 26(a) or 26(e)(1) shall not be permitted to use [the materials not disclosed] at a trial, at a hearing, or on a motion," "unless such failure is harmless," or there was "substantial justification" for that failure. In addition, Rule 16(f) authorizes a District Court to impose sanctions for the breach of a Pretrial Order. In applying these Rules, we recognize that "the failure to disclose in a timely manner is equivalent to failure to disclose," and that a party must produce the required evidence "within deadlines set by the court or risk sanctions under Rules 16 and 37." *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir.1998).

■ "While sanctions under Rule 37(c)(1) are mandatory *** exclusion of evidence should not apply if the offending party's failure was 'substantially justified,' or if the failure was 'harmless.' " *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1064. These exceptions to Rule 37(c)(1)'s imperative serve "to avoid unduly harsh penalties" that may result from an inflexible application of the Rule. *Id.*, citing *Rule 37(c), Federal Rules of Civil Procedure, Advisory Committee Notes—1993 Amendments*. In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its

failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice. See, *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1064, citing *Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir.1994); *Millen v. Mayo Foundation*, 170 F.R.D. 462, 465 (D.Minn. 1996); see also, *Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 744 (Fed.Cir.1997).

■ As was previously the case, it is beyond dispute that Johnson's second supplemental report, which was produced on March 29, 2000, is untimely under our Scheduling Order. Consequently, it is inescapable that the untimely disclosure of Johnson's second supplemental report effectively denies Transclean the opportunity to depose Johnson on the new opinions which were added to his initial report, much less develop rebuttal expert opinion evidence, in view of the rapidly approaching Trial date. Clearly, admission of Johnson's most recent report would traverse the substantive requisites of the four-factor test that we are obligated to apply to facially untimely expert disclosures.

Here, Bridgewood fails to justify the untimeliness of Johnson's new report. According to Bridgewood, "[t]he March 19, 1999 Viken affidavit created a brand new theory and explanation from anything set forth previously ***." However, as noted by Transclean, Bridgewood had numerous opportunities to discover the information that was contained in Viken's Affidavit, during the one and one-half day period in which Viken was deposed, as part of the discovery process.

As an additional "justification," in its Memorandum, Bridgewood seems to imply that Viken was not entirely forthcoming during his deposition. However, Bridgewood has failed to identify a single question, which was asked of Viken, that, if properly answered, would have provided Bridgewood with the information necessary to the second supplement of Johnson's expert report. Those questions were not asked of Viken. Moreover, Viken's Affidavit was produced to Bridgewood on March 19, 1999. Yet, for some inexplicable reason, Bridgewood waited for over another year, until March 29, 2000—less than a month before the start of Trial—to produce Johnson's second supplemental expert report. Simply put, Bridgewood has not attempted to explain, much less to justify, its substantial delay in producing Johnson's most recent supplementation. Admitting Johnson's new report would endorse Trial by ambush, a result we find unacceptable. In sum, Bridgewood's untimely disclosure of Johnson's report is not substantially justified.

Nor can it be said that the failure to timely disclose was harmless. The prejudice to Transclean, in being confronted by expert opinions which were not disclosed until less than a month before Trial, and over eighteen months after the deadline for expert disclosures has expired, is palpably compelling. Since Trial is set to begin in less than one week, there is virtually no opportunity for a continuance, or a reopening of discovery, so as to alleviate the prejudice to Transclean. As a consequence, in accordance with Rules 16(f) and 37(c)(1), Johnson's second supplemental expert report must be stricken from the Trial of this matter.

D. *Plaintiffs' Motion to Strike Section 282 Notice of Prior Art.*

■ Next, Transclean seeks to prevent, at Trial, the introduction of evidence of prior art, by Bridgewood, that purportedly was not disclosed during the relevant discovery period. As related by Transclean, for the first time, on or about March 23, 2000, Bridgewood disclosed a list of prior art consisting of ten numbered items. See, *Plaintiffs' Memorandum in Support of Motion to Strict Section 282 Notice of Prior Art; Ex. 1*. According to Bridgewood, by proffering this list to Transclean,

it merely provided notice, pursuant to Title 35 U.S.C. § 282,[2] of the prior art "upon which it will rely at Trial to prove the invalidity of Viken's U.S.Patent No. 5,318,-080 *** or the state of the prior art as of October 23, 1991." *Id.* However, as contended by Transclean, because Bridgewood had a duty to disclose the evidence of prior art during the discovery period, it should now be prohibited from introducing this evidence at Trial. We agree, in part.

During the discovery period, Transclean requested Bridgewood to respond to the following Interrogatory:

State all facts and identify all documents on which you base your claim that the '080 Patent is invalid and/or void.

See, *Plaintiffs' Memorandum in Support of Motion to Strict Section 282 Notice of Prior Art; Ex. 2.*

In response, Bridgewood disclosed only two items of prior art, which it asserted were responsive to this Interrogatory; namely, U.S.Patent No. 3, 513, 941 ("Becnel Patent"), and a Japanese Patent, JP 2–72299. *Id.*

Rule 26(e)(2), Federal Rules of Civil Procedure, imposes upon a party "a duty to seasonably amend a prior response to an interrogatory *** if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." This Rule has a simple but important purpose; specifically, to prevent Trial by ambush. See, *Transclean Corp. v. Bridgewood Services, Inc.,* supra at 1061, citing *Reed v. Iowa Marine and Repair Corp.,* 16 F.3d 82, 85 (5th Cir.1994). As the Eighth Circuit Court of Appeals has explained:

For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests. Parties are "entitled to accept previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue."

*Transclean Corp. v. Bridgewood Services, Inc.,* supra at 1061, citing *Elca Enterprises, Inc. v. Sisco Equip. Rental & Sales, Inc.,* 53 F.3d 186, 189 (8th Cir.1995) (affirming Trial Court's exclusion of evidence of diminution value damages because "after misleading the defendants for several months," through incomplete interrogatory responses, the plaintiff "made an eleventh-hour attempt to switch the basis for its alleged damages."), quoting *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3rd Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

As the latter part of the Rule makes plain, "the duty to supplement is excused only if the information at issue has 'already been revealed by a witness in a deposition or otherwise through formal discovery, or, alternatively, by providing the additional information in writing.'" *Gonsalves v. City of New Bedford,* 168 F.R.D. 102, 110 (D.Mass.1996), quoting 8 Wright, Miller and Marcus, *Federal Practice and Procedure: Civil 2d § 2049.1,* p. 604.

On the basis of the Record before us, it appears that Bridgewood never supplemented its response to Transclean's discovery requests, so as to include many of the items listed in its most recent disclo-

**2.** Title 35 U.S.C. § 282 provides as follows:

In actions involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Claims Court, as showing the state of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

sure of prior art. Moreover, Bridgewood does not argue that its most recent identification of prior art had been made known to Transclean through other forms of discovery. Rather, Bridgewood concedes that "patent invalidity arguments at trial will be based upon 35 U.S.C. § 102, with respect to prior art represented by commercial Hydro–Pure devices made, used, and sold by Neil Becnel." *Defendant's Memorandum in Opposition to Motion to Strike Section 282 Notice of Prior Art*, at 1.

Further, as urged by Transclean, in *Transclean Corp. v. Bridgewood Services, Inc.*, supra 1081–1083, we exhaustively reviewed Bridgewood's contention, that the Japanese Patent J–72299, and the Becnel Patent, supported its claims of invalidity of the Viken Patent, and we specifically stated that, ultimately, any comparison of the Hydro–Pure device, to the Viken patent, was best reserved for Trial. *Id.* at 1078. Therefore, because of Bridgewood's failure to disclose, during the discovery period, much of the information concerning prior art, that is contained in its disclosure of March 23, 2000, Bridgewood is estopped from presenting at Trial, the evidence contained in its recent Notice of Prior Art, with two exceptions.

First, Bridgewood may introduce the prior art information that was timely disclosed and, second, Transclean has failed to demonstrate that its prior discovery responses sought to elicit information regarding the prior art that was in existence before 1991, and it has also failed to demonstrate that such evidence is not relevant, under Rule 401, Federal Rules of Evidence. As such, Bridgewood will be allowed to offer the information, which is contained in its recent Notice of Prior Art, solely to clarify the background, or the state of the art, prior to Viken's alleged invention. We note however, that such

evidence is only marginally relevant, and would appear to be of limited value to the Jury's consideration of the issues. As a result, Bridgewood is forewarned, that the Court will reject any attempt, on its part, to employ the information contained in the Notice of Prior Art—other than that involving the Hydro–Pure devices of Neil Becnel—to bolster its claim that the Viken Patent is invalid, or to imply that the Viken Patent would have been obvious to one of ordinary skill in the art.[3]

E. *Plaintiffs' Motion to Exclude Sample Photographs and Machines.*

By this Motion, Transclean seeks to prohibit the introduction of evidence, at Trial, of two "Hydro–Pure" machines, and photographs of the same, which were allegedly invented by Becnel. Transclean contends that the machines, and photographs, should not be admitted, "because they lack foundation, are more prejudicial than probative, and are likely to mislead the jury and confuse the issues." *Plaintiffs' Memorandum in Support of its Motion in Limine to Exclude Sample Machines and Photographs*, at 1. However, because we explicitly rendered decisions, on these same issues, after considering the same arguments of Transclean, that are now before us, we see no need to reconsider our analysis. See, *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1072–1075.

 First, Transclean repeats its argument that, because the two modified brake bleeder devices, which Becnel purportedly invented and sold to his friends, Tony Burke, and David Mills, are no longer in the condition they were in at the time of alleged invention, they should be excluded, as alterations, under Rule 901, Federal Rules of Evidence. However, in *Transcle-*

---

**3.** As the parties are aware, Bridgewood's claim, that the Viken Patent would have been obvious to one of ordinary skill in the art, was earlier eliminated from these proceedings, because of Bridgewood's "failure to make it known to the Plaintiffs before raising it at the Summary Judgement stage." *Transclean Corp. v. Bridgewood Services, Inc.*, 77 F.Supp.2d 1045, 1083 (D.Minn.1999).

*an Corp. v. Bridgewood Services, Inc.,* supra at 1074, we specifically rejected this argument, and stated:

> No doubt, the Plaintiffs have reason to question the authenticity of Becnel's improved Hydro–Pure devices, as being exemplars of his alleged invention. Their argument, however, that the machines are, therefore, inadmissible for lack of foundation, simply does not reflect the governing law. Bridgewood's burden of proof, under Rule 901, is slight; it "need only show a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *Link v. Mercedes–Benz of North America, Inc.,* 788 F.2d 918, 927 (3rd Cir.1986). Where, as here, Bridgewood has made a *prima facie* showing, through the inventor's own attestation, that the two Hydro–Pure devices are the ones that he claims to have invented, and that their pertinent features have not changed, any doubts raised by the Plaintiffs simply go to the weight of that evidence, which will be assigned by the trier of fact, and does not go to the admissibility of that evidence. See, *United States v. Kandiel,* 865 F.2d 967, 974 (8th Cir.1989) ("Any question concerning the credibility of the identifying witness simply goes to the weight the jury accords this evidence, not to its admissibility."); *United States v. Reilly,* 33 F.3d 1396, 1409 (3rd Cir.1994) ("contradictory evidence goes to the weight to be assigned by the trier of fact and not to admissibility.") [citation omitted]; *United States v. Albert,* 595 F.2d 283, 290 (5th Cir.1979) ("Any doubts the defendants may have raised about his identification went to the weight and not the admissibility of the tape."), cert. denied, 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979).

Next, Transclean rejuvenates its contention that, because Becnel altered one of the Hydro–Pure fluid changing devices, after he was retained as an expert in this litigation, he is guilty of an intentional spoliation of evidence, and should be sanctioned accordingly. However, because Transclean has failed to offer any additional evidence, that would lend further support to this argument, we are compelled to reiterate our previous ruling as follows:

> On this Record, there has been no demonstration that Becnel's alteration was significant, or of a degree to infer that the alteration was intentional, fraudulent, or done with a desire to frustrate the search for the truth—showings that would warrant such exclusion, or an unfavorable inference instruction to the Jury. Cf., *SDI Operating Partnership, L.P. v. Neuwirth,* 973 F.2d 652, 655 (8th Cir.1992). Indeed, Becnel had given his purchasers a "lifetime warranty," which would offer a plausibly innocent reason for his actions. As a result, based upon the facts before us, spoliation has not been shown.

*Transclean Corp. v. Bridgewood Services, Inc.,* supra at 1074, n. 16.[4]

Next, Transclean again contends that, allowing the admissibility of the two devices, based on the authentication of Becnel—whose story the devices are intended to corroborate—involves a circuitry of proof. Previously, we dismissed this argument as unpersuasive, and held as follows:

> The analysis is circular only if one equates the admissibility of these devices, under Rule 901, with their sufficiency under the clear and convincing standard of proof. As we have explained, evidence that suggests that the devices have been altered will diminish the devices' corroborative weight, but will not affect the admissibility of the

---

**4.** In addition, Transclean now argues that the introduction of the two altered machines is likely to confuse and mislead the Jury. We disagree, as any doubts raised by Transclean, based on the alteration of the machines, do not affect the admissibility of the evidence but, rather, should be considered by the Jury, in assessing the weight to be afforded that evidence.

devices, as "[t]he ultimate decision as to whether a[n] *** item of *** evidence is as purported is for the trier of fact." 31 M. Graham, *Federal Practice & Procedure: Evidence § 6821 (Interim Edition)*, p. 669. The fluid changing machines are admissible. *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1074. Finally, Transclean again argues that, because Bridgewood seeks to corroborate Becnel's oral testimony with various photographs of the Hydro–Pure machines, and because nearly all of the photographs were generated during, or after 1995, the photographs are not relevant to the issue of anticipation. In addition, Transclean urges that, because these photographs do not depict the operation of Becnel's inventions, they will not be helpful to the Jury, in determining whether Becnel's alleged inventions anticipated the Viken Patent.

Here, as before, Transclean has reasserted an argument, that we have previously, and resoundingly rejected, when we stated as follows:

> As additional corroborative evidence, Bridgewood submits a hodgepodge of Becnel' s sometimes illegibly handwritten notes, grainy copies of Polaroid photographs, business records, and old advertisements. See, *Bridgewood App. P7*. Most of the notes and photographs were made in 1995 or later, which minimizes their corroborative impact. See, *Becnel Depo.* at 85, 136–38. Still, descriptions from 1995 of an automatic transmission fluid exchanging device, that equalized the fluid flows with a rubber diaphragm, could corroborate Becnel's story, at least to the extent that they could show that he did not concoct the device after Bridgewood was accused of infringement.

*Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1075. Consequently, because of our previous rulings on these same issues, Transclean's Motion to Exclude Sample Machines and Photographs is denied.

F. *Plaintiffs' Motion to Exclude Evidence Based upon the Summary Judgement Memorandum Order.*

In this Motion, Transclean requests that we issue a blanket ruling so as to "exclude evidence relating to issues previously decided by this Court in its Summary Judgement Order or other pretrial rulings." *Plaintiffs' Memorandum in Support of Motion to Exclude Evidence Based upon the Summary Judgement Memorandum Order*, at 1. Specifically, Transclean expresses concern that, at Trial, Bridgewood will, once again, attempt to use evidence such as the Becnel Patent, and Japanese Patent JP 2–72299, in order to buttress its claims that the Viken Patent is invalid. As well, Transclean notes that, in spite of our previous ruling, which excluded Johnson's first supplemental expert report, Bridgewood may attempt to introduce, through Johnson's oral testimony at Trial, his opinions from that supplemental report. See, *Transclean Corp. v. Bridgewood Services, Inc.*, supra at 1063–1064.

With regards to the Becnel Patent, and Japanese Patent JP 2–72299, our prior discussions have made clear that Bridgewood is estopped from presenting this evidence at Trial, in an effort to support its claims of the invalidity of the Viken Patent. As such, we need not address that issue further. Moreover, as we have previously noted, under Rule 37(c)(1), "[a] party that *** fails to disclose information required by Rule 26(a) or 26(e)(1) shall not be permitted to use [the materials not disclosed] at a trial, at a hearing, or on a motion," "unless such failure is harmless," or there was "substantial justification" for that failure. Our prior determination, that Bridgewood's belated disclosures of Johnson's first and second supplemental expert reports, were not substantially justified, or harmless, excludes that evidence at Trial. We deny, however, as premature, Transclean's request that we issue some blanket preclusion Order, without respect to the context, or the purpose for which the

evidence will be offered. This reluctance, however, should not be viewed as leave to collaterally attack the rulings we have previously made.

### G. *Plaintiffs' Motion to Exclude Exhibit F of the Memmolo Declaration.*

 Transclean requests that we prohibit the introduction of Exhibit F, to the Declaration of Sam R. Memmolo ("Memmolo"), at Trial. Exhibit F represents a testing report from CTC Analytical Services in Cleveland, Ohio, which performed tests under the Texaco private label Texcheck. Prior to those tests, data was collected for analysis by CTC Analytical Services as follows:

> The protocol for each vehicle was to draw a fluid sample of new ATF exiting a service adapter hose of a standard T–TECH unit fully charged for service with Pennzoil brand Mercon–Dexron III fluid. The T–TECH had been filled for each service from a 55 gal. drum of new ATF. Another sample was drawn from the last flow of ATF exiting a service adapter hose from the vehicle just serviced. Each service received the full contents of the T–TECH cylinder, i.e. approximately 14 quarts. Samples of several ounces each were deposited directly into plastic bottles provided with the analytical kits. The cap was immediately secured. Each bottle was then placed in the black plastic shipping holder along with the information for identifying the sample, requesting the basic analytical service and naming T–TECH Industries as the customer.

*Plaintiffs' Memorandum in Support of Motion to Exclude Exhibit F of the Memmolo Declaration, Ex. 1.*

Apparently, after receiving the sample provided, CTC Analytical Services performed an analysis, and thereby produced the data contained in Exhibit F, which represents a computer printout listing the amounts of the various components/contaminants contained within the tested fluid.

As argued by Transclean, Exhibit F should not be admitted at Trial, because the information contained in that Exhibit lacks foundation, is based upon multiple layers of hearsay, and is more prejudicial than probative. See, *Plaintiffs' Memorandum in Support of Motion to Exclude Exhibit F of the Memmolo Declaration,* at 1. Transclean also maintains that the data contained in Exhibit F should be excluded, because Memmolo is not qualified to interpret it. *Id.* Specifically, Transclean contends that, because Memmolo had no involvement in obtaining the tested samples, and cannot verify the methods used in taking the samples, Exhibit F should be excluded from evidence at Trial. However, Bridgewood responds that, at Trial, it will produce witnesses who will testify about how the tested samples were taken, and were sent to CTC Laboratories. See, *Defendant's Opposition to Plaintiffs' Motion to Exclude Exhibit F of the Memmolo Declaration.* As such, an outright exclusion of the data contained within Exhibit F, on foundational grounds, would be premature, as Bridgewood has not been afforded the opportunity to present evidence as to the sample collection methods that Transclean now challenges.

Next, Transclean argues that Exhibit F should be excluded, because Memmolo did not interact with CTC Analytical Services in order to ascertain whether that organization followed proper testing protocols and methods, when it performed the tests on the fluid samples, from which the data contained in Exhibit F was derived. However, Memmolo's lack of participation in the testing procedures fails to provide a sufficient basis to exclude the data contained within Exhibit F, unless there is a total failure of proof as to the veracity of the testing results. While an expert may testify as to the acceptability of test results, without the presentation of the scientific validity of the tests employed, that is only appropriate when the tests are of a

type upon experts in that field normally rely. As but one example, a treating physician may rely upon the interpretations of an x-ray, performed by a radiologist, without requiring the radiologist to first testify. Here, however, we have no similar showing, and the admissibility of Memmolo's opinions will require evidence that the tests were properly performed.

■ Lastly, Transclean has challenged Memmolo's interpretation of the data contained in Exhibit F, because of his purported incompetence as an expert. In support of this challenge, Transclean points to Memmolo's deposition testimony, as it relates to the data contained in Exhibit F, which reads as follows:

Q: What is your understanding of what the business is of CTC Analytical Services, Inc., if you know?

A: They're an oil spectral analysis company or an oil analysis company.

Q: When you say oil analysis or oil spectral analysis, what do you mean?

A: Those companies usually offer a service where you take a sample of the fluid or the oil and you send it to them and they can analyze it and tell you about contamination, metals, water, that kind of stuff that's present in there. And you know what's suppose to be there and what's not suppose to be there, you know if you have a problem.

Q: Did you review the test results that apparently were done by this CTC Analytical Services?

A: Yes, I reviewed—I remember reading those but I'm not sure that I was— I'm not an engineer.

Q: Okay. The test results to your knowledge do not show what percentage of the ATF fluid in the T–TECH machine changed, correct?

A: I think it's an analysis of the oil.

Q: Right. I mean, it shows whatever the various contaminants or components were of an oil sample that were sent in by T–Tech, correct?

A: I am not qualified, I don't think, to tell from that report. Like I say, I'm not an engineer. I can only read it with my own comprehension of it, but I'm not an engineer. I couldn't tell you what that report, you know, constitutes, what percentage of contaminates are left behind and if that's consequential.

Q: As you just said, you're not an engineer, you don't know what it means?

A: Down to that specific level, no.

See, *Plaintiffs' Memorandum in Support of Motion to Exclude Exhibit F of the Memmolo Declaration, Ex. 3,* at 45–46.

When evaluating the admissibility of expert testimony, a Court employs Rule 702, Federal Rules of Evidence, and looks to both the relevance and the reliability of the proffered opinion testimony.[5] See, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 586, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Blue Dane Simmental Corporation v. American Simmental Association,* 178 F.3d 1035, 1038 (8th Cir. 1999); *Jaurequi v. Carter Manufacturing Co.,* 173 F.3d 1076, 1080 (8th Cir.1999).

With respect to the Court's gatekeeper function, in evaluating the admissibility of expert opinion evidence, it is now beyond dispute that the Supreme Court's holding, in *Daubert,* applies to all types of expert opinion evidence, inclusive of technical or specialized expertise. See, *Jaurequi v. Carter Mfg. Co., Inc.,* supra at 1082, citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 139, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation— applies not only to testimony based on

---

**5.** Rule 702, Federal Rules of Evidence, provides as follows:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a

fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise.

'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

The " 'preliminary assessment [is] of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *Jaurequi v. Carter Mfg. Co., Inc.,* supra at 1083, quoting *Watkins v. Telsmith, Inc.,* 121 F.3d 984, 990–91 (5th Cir.1997), quoting in turn *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* supra at 592–93, 113 S.Ct. 2786. It is equally clear that "a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that area of expertise, or that are not founded on a reliable methodology." *Smith v. Rasmussen,* 57 F.Supp.2d 736, 766 (N.D.Iowa 1999), citing e.g., *Kumho Tire Co., Ltd.,* supra at 1176–77 (finding the proffered witness qualified as an expert in mechanical engineering, but that his methodology, in analyzing a particular tire failure, was not reliable).

Our review of the Memmolo's testimony, which is recited above, clearly reflects that Memmolo is not qualified to render an opinion on the meaning of the data contained within Exhibit F. This is evidenced by the cited deposition testimony, in which Memmolo specifically states that he is not qualified to render an opinion as to whether Exhibit F displays the various contaminants/ components contained within the fluid sample sent to CTC Analytical Services. As such, Memmolo's testimony plainly does not meet the hurdle presented by Rule 702, which permits a qualified expert to testify in the form of an opinion only if the witness' specialized knowledge will assist the jury to understand the evidence or decide a fact in issue. See, *Zimmer v. Miller Trucking, Co.,* 743 F.2d 601, 604 (8th Cir.1984); *United States v. Scavo,* 593 F.2d 837, 844 (8th Cir.1979). Therefore, even if, at Trial, Bridgewood succeeds in validating the methodologies used to obtain the data contained in Exhibit F,

Memmolo will be estopped from rendering an "expert" opinion concerning the meaning and/or significance of that data. However, since Transclean's Motion does not seek to prohibit Memmolo from offering his opinion but, instead, seeks the outright exclusion of Exhibit F, at the time of Trial, its Motion is denied.

**H.** *Plaintiffs' Motion to Exclude Evidence of Other Advertising and Memmolo's Opinion About Advertising.*

Transclean also seeks to exclude evidence that Bridgewood may offer at Trial, which involves advertisements of entities who are not a part of this litigation. In addition, Transclean asks that Memmolo be prohibited from offering his personal opinion about the understanding that consumers have garnered from their observation of Bridgewood's advertisements.

As related by Bridgewood, the advertising claims made by other entities are relevant to this action, because they will demonstrate that none of its advertisements compared its automatic transmission fluid exchange device to that allegedly produced by Transclean. However, this contention does not alter our prior determination that Bridgewood has failed to establish a nexus between the content of advertisements, which are totally unrelated to this litigation, and the essential question of whether the consumers, who observed Bridgewood's allegedly false advertisements, actually construed a false, implied message, and were, thereby, deceived. Bridgewood's advertisements do not expressly compare its automatic transmission fluid exchange device to those of entities who are not parties to this litigation. Further, we have already established that the context of an assertedly false advertisement is only relevant to aid in the determination of whether the advertisement actually conveyed a false, implied message, and thereby deceived a significant portion of the recipients who observed that advertisement. We continue

in the view that, even if some marginal nexus were present, the probative value of this evidence is outweighed by the danger that it will divert the Jury's attention from the central issue—namely, whether Bridgewood's advertisements conveyed a false message to those who received it. Therefore, we adhere to our earlier expressed views, as contained in this and our prior Orders on point, and we see no need to revisit that issue further.

■ Next, Bridgewood contends that, since Memmolo is an expert in the functioning of automatic transmissions, owing to his years of experience in evaluating and using such devices, he should not be precluded from offering his opinion regarding how a person, who is experienced in the field of automatic transmissions, would understand Bridgewood's advertisements. In his Affidavit, Memmolo evidences an intent to offer his opinion that **"any mechanic,** or **other relevant customer** seeking to purchase a[sic] ATF fluid exchange device, will not understand such wording as a literal representation that a T–TECH device will remove every trace of old ATF from within an automatic transmission." See, *Plaintiffs' Memorandum in Support of Motion to Exclude Exhibit F of the Memmolo Declaration, Ex. 2* [emphasis added]. Further, Memmolo opines that, "[u]pon information and belief, **any mechanic, or other relevant customer** seeking to purchase a[sic] ATF fluid exchange device, who encounters advertising wording such as "complete fluid exchange" or "total fluid exchange" would understand such wording to have the same connotation as "replaces 100% of your vehicle's dirty, old fluid", or "will replace nearly 100% of your vehicle's old, dirty fluid" ". *Id.* [emphasis added].

In support of its contention that Memmolo should be precluded from offering this testimony, Transclean points to Memmolo's deposition testimony which reads as follows:

Q: And so you've provided your personal one man opinion in your report, correct?

A: That's correct.

Q: You didn't go out and conduct any kind of survey, right, or market research study?

A: No, I did not.

Q: And you didn't go out and interview people, right?

A: I interview people every day, every week.

Q: Let me make my question more clear. You didn't go out and interview people for the purpose of forming a basis for your report in this case?

A: No; solely my opinion.

Q: It's your estimate or guess as to what other people would believe looking at certain things, right?

A: That is correct.

*Plaintiffs' Memorandum in Support of Motion to Exclude Evidence of Other Advertising and Memmolo's Opinion About Advertising, Ex. 2,* at 24–25.

This testimony clearly supports the exclusion of Memmolo's opinion, as to how other mechanics/customers would interpret Bridgewood's advertising claims, as such an opinion is irremediably unreliable. Memmolo unqualifiedly admits that he offers no more than his own subjective belief as to how the common person would view these advertisements, and such a belief provides no assistance to Jurors who, with as much skill and background, can appraise the extent to which the advertising is misleading, if at all. See, *Rule 702, Federal Rules of Evidence* (expert opinion evidence must "assist the trier of fact" to be admissible). At best, Memmolo's opinions are sheer conjecture, as they are not founded upon any reliable methodology, but are expressions of personal belief. See, *Smith v. Rasmussen,* supra at 766, citing e.g., *Kumho Tire Co., Ltd.,* supra at 1176–77. As such, Transclean's Motion to Exclude Evidence of Other Advertising

and Memmolo's Opinion About Advertising, is granted.

NOW, THEREFORE, It is—

ORDERED:

1. That Transclean's Motion *in limine* to Exclude Evidence of Inequitable Conduct [Docket No. 121] is DENIED.

2. That Transclean's Motion *in limine* to Exclude Evidence of Other Infringement and Other Lawsuits [Docket No. 121] is GRANTED.

3. That Transclean's Motion *in limine* to Strike Section 282 Notice of Prior Art [Docket No. 121] is GRANTED in part, as more fully detailed in the text of this Order.

4. That Transclean's Motion *in limine* to Exclude Sample Machines and Photographs [Docket No. 121] is DENIED.

5. That Transclean's Motion *in limine* to Exclude Supplemental Expert Report of Eugene L. Johnson [Docket No. 121] is GRANTED.

6. That Transclean's Motion *in limine* to Exclude Evidence Based Upon the Summary Judgement Memorandum Order [Docket No. 121] is DENIED, as moot.

7. That Transclean's Motion *in limine* to Exclude Exhibit F of the Memmolo Declaration [Docket No. 121] is DENIED.

8. That Transclean's Motion *in limine* to Exclude Evidence of Other Advertising and Memmolo's Opinion About Advertising [Docket No. 121] is GRANTED.